Tompkins, J.,
delivered the opinion of the Court.
Maupin brought his action in the Circuit Court of Boone county against Parker, for money had and received by the defendant to the plaintiff’s use. Plea non-assumpsit, and issue joined. An agreed case was made as follows: The plaintiff and defendant agree to the following as “ the facts of the casen On the first Monday in November, 1831, the defendant, who was and is Commissioner of the School Lands in the county of Boone, duly appointed, and constituted, and qualified, according to the provisions of the act of the Legislature of this State, entitled an act to provide for the sale of the township school lands of this State, approved the 17th day of January, 1S31, sold to the plaintiff the south-east quarter of section sixteen, in township forty-nine, in range 12, in the county of Boone, being the land granted by the United States to the State of Missouri, for the use of the inhabitants of said township, for the use of schools, for three hundred and forty dollars. The plaintiff paid the defendant, as Commissioner, the purchase money, on the 7th day of November, 1831, and has received a conveyance of the land in pursuance of, and according to, the provisions of the act of the Legislature of this State.
Now if the Court shall be of opinion that a sale and conveyance of any of the land mentioned in the said act of the Legislature of this State, made in pursuance of and according to the directions of said act, cannot and will not transfer to the purchaser thereof a good title in fee simple for the same, judgment shall be given for the plaintiff for the purchase money, &c., otherwise judgment shall be given for the defendant, &c.
The' Circuit Court gave judgment for the defendant, and the plaintiff, to reverse the judgment, appeals to this Court.
*220 By an act of Congress to authorize the people “ of the Missouri Territory to form a Constitution, &c., passed 6th March, 1820, it is provided that section number sixteen in every township, and where such section has been sold or otherwise disposed of, other lands equivalent thereto, and as contiguous as may be, shall be granted to the State for the use of the inhabitants of such township for the use of schools.” See section 6th.
On the part of the appellant it is contended that the State is a mere trustee, and has by virtue of (he grant from Congress a mere legal estate for the use and benefit of the inhabitants of the township. If Congress had intended that the State should have any control over the land thus granted, why, it is asked, was not the exercise of that control provided for as in the case of the Saline lands granted to the State, in the same section, for its own use. It is also contended, that from the circumstance of the land thus granted lying in the centre of each township, it is to be inferred that it was the intention of Congress that schools should be established on the sixteenth section for the use of such townships. Had the grant been made to A. for the use of B., there is no doubt that A. would have no right to alienate the land so granted. But the land thus granted is given to the State for the use of the inhabitants. The State then has the same jurisdiction over this land that she has over the real property of any individuals living within h,er limits, and the United States have divested themselves of their right of control over this land, as much as they have over the lands sold to individuals, with the express pledge of the State that the inhabitants of each township would be permitted to enjoy the same for the use of schools ; but the State of Missouri was equally bound to protect every individual who had, before her admission into the Union, purchased land from the United States, in the enjoyment of his property. Yet it could not be doubted that the Legislature (which we may call the agent of the State) have not the right to change any of the laws in force, at the time the State entered the Union, although the mode of enjoying the lands purchased of the United States might thereby be changed. Por instance, the Legislature might well pass a law to authorize the wife during coverture to dispose of land that she held in her own right; or the husband might be authorized to dispose in fee simple of lands that descended to his wife.
In the case now before us, the legislative body have said that on petition of three-fourths of the householders of the township, the County Court may direct the 16th sections to he sold, because that majority of tile inhabitants of the township believes the proceeds of the sale will be more useful to them for the advancement of education than the land would be. The State has entrusted the legislative body the same power over these lands that has been given to it over the estates of individuals. It can divest neither the one nor the other of the right of property; but it only'in the one instance allows the individual to alienate in a manner different from what he did before, and in the other allows the school lands to be sold and enjoyed as personal property, on petition of three-fourths of those interested in them. The State here is trustee, and is said to have no other interest in the land granted for the use of schools, than an individual trustee. It is granted that in character of trustee, the State has a mere legal estate in the land; hut in character of sovereign of the country, it has the same right over those lands that it has over other lands lying within its limits: it cannot direct the fund to any other use than that of schools; hut through the legislative body it can make rules to direct in what manner the funds arising from such lands, whether by sale or lease, shall be applied, leaving to the in *221 habitants of the township always the choice of retaining fhe land or of alienating it. It might he objected that every inhabitant of the township, having an interest in the land, cannot be compelled to alienate: To this it may be answered that unanimity is not to be expected from the inhabitants of any township in the mode-of enjoyment, and all the Legislature can do is, to preserve the property for their use, in such manner as to it shall seem best to a majority of those interested. It has seemed proper to the Legislature to authorize the Courts, on application of three-fourths of the householders of any township to sell those lands; but still the money arising from such sale is the property of all the inhabitants of the township, and cannot be by this law divested from the use directed by the act of Congress. The Saline lands, it may be observed, were given to the State for her own use, therefore Congress, in giving them, prescribed how they should be leased by the Legislature ; and has by a subsequent act authorized the Legislature to sell them. But the inhabitants of the township being the beneficial owners of the school lands, the pow-qr of selling them could not with so much propriety be vested in the Legislative body. The Legislature representing the State, and exercising its powers, passes an act authorizing the inhabitants of the township, who alone have the beneficial interest, to sell under certain regulations. But we are met by the authority of a decision of the Supreme Court of Tennessee on the same subject. It seems that the Legislature of that State requested the opinion of the Judges of the Supreme Court upon the powers of the Legislature to sell and convey the school sections reserved for the education of children, by virtue of the compact with North Carolina and the United States of 1806.
The subject, the Judges of that Court state, was examined with the care its importance merited, and they concluded that the Legislature had not the power to sell.
The article of compact between Tennessee and North Carolina and the United States reads thus:
“And the State of Tennessee shall moreover in issuing grants and perfecting titles, locate six hundred and forty acres to every six miles square in the Territory hereby ceded, where existing claims will allow the same, which shall be appropriated for the use of schools for the instruction of children forever.”
The language of the act by which the 16th sections are granted to this State, is as follows: these sections shall be granted to the State, for the Use of the inhabitants of such township, for the use of schools.
It cannot be contended that the terms used in the grant to the State of Missouri are much less strong than those used in the compact between the States Of North Carolina, Tennessee and the United States. To differ in opinion from so highly respectable a Court, is enough to make us entertain strong doubts of the correctness of this opinion.
But we have the consolation to reflect that we have arrived at this conclusion after a patient attention to able arguments on both sides of the question. Whereas the opinion of the Supreme Court of Tennessee seems rather to have been extra-judicial.
The Judges of that Court give their opinion as in a case of William Lowry et al. v. Miller Francis, Treasurer of East Tennessee.
But the letter of the Judges of that Court to the General Assembly accompanying that opinion, informs us that the subject was examined at the request of the Legislature, and we are, for that reason, inclined to the belief that the action was a feigned one, in which a cause is never argued with so much zeal and ahüity, as when the *222 rights of the parties are earnestly litigated. We are, for the reasons ahoye given, of opinion that the Circuit Court committed no error in giving judgment for the defendant ; and its judgment is therefore affirmed. '