STATE OF MISSOURI at the Relation of SCHOOL DISTRICT OF FULTON, MISSOURI, (sometimes known as School District No. 58 of Callaway County, Missouri) a Municipal Corporation, Relator, v. CARL E. DAVIS, COUNTY CLERK OF CALLAWAY COUNTY, MISSOURI, Respondent, No. 42260—236 S. W. (2d) 301.

Court en Banc, February 12, 1951.

*Baker & Baker* by *J. R. Baker* for relator.

*John M. Cave* for respondent.

[302] HOLLINGSWORTH, J.—This is an original proceeding in mandamus. The relator is School District of Fulton, Missouri. Respondent is the County Clerk of Callaway County.

The case requires determination of the proper method of distribution of township school funds that have been liquidated under the provisions of Section 7, Article IX, of the Constitution of 1945. It reads: ''All real estate, loans and investments now belonging to the various county and township school funds, except those invested as hereinafter provided, shall be liquidated without extension of time, and the proceeds thereof and the money on hand now belonging to said school funds of the several counties and the city of St. Louis, shall be reinvested in registered bonds of the United States, or in bonds of the state or in approved bonds of any city or school district thereof, or in bonds or other securities the payment of which are fully guaranteed by the United States, and sacredly preserved as a county school fund. Any county or the city of St. Louis by a majority vote of the qualified electors voting thereon may elect to distribute annually to its schools the proceeds of the liquidated school fund, at the time and in the manner prescribed by law. All interest accruing from investment of the county school fund, the clear proceeds of all penalties, forfeitures and fines collected hereafter for any breach of the penal laws of the State, the net proceeds from the sale of estrays, and all other moneys coming into said funds shall be distributed annually to the schools of the several counties according to law.''

Prior to the adoption of the Constitution of 1945, the County Court of Callaway County administered and kept separate the county capital school fund and the township capital school funds, and also kept each township fund separate from the other township funds in the county. After the adoption of, and pursuant to, the above provision, the county court liquidated all real estate, loans and investments then belonging to the various county and township school funds and reinvested the proceeds as required by law, carrying them on the books of the county clerk and county treasurer as follows:

County capital school funds ................... $77,780.54

Individually listed township capital school funds, amounting in the aggregate to ............... $37,172.77

Total ....................................... $114,953.31

Thereafter, on February 18, 1950, an election was held in accordance with Sections [303] 171.020 and 171.030, Mo. R. S. 1949, to determine whether the capital of the liquidated county and township funds should be annually distributed. A majority voted in favor of annual distribution.

The total school enumeration for 1949 in Callaway County was 4,426, which included the 1,600 in relator school district.

Relator takes the position that the quoted constitutional provision has eliminated the distinction existing between county capital school funds and township capital school funds and that respondent, whose duty it is to apportion and distribute school funds, should divide the total sum of $114,953.31 by the total county enumeration of 4,426, then multiply the resulting quotient by 1,600, and apportion and distribute to relator the sum of $41,555.52 resulting from that method of computation.

Respondent takes the position that the distinction existing between the county capital school fund and the township capital school funds still exists. He, therefore, proposes to apportion and distribute the various township capital school funds, amounting in the aggregate to $37,172.77, to the respective schools in the respective townships according to the enumeration of those schools; then to apportion and distribute the county capital school fund of $77,780.54 by dividing that amount by 4,426, the total enumeration of the county, and multiplying the resulting quotient by the enumeration in each school district, the enumeration of relator being 1,600. By the method of computation proposed by respondent, the relator would receive the sum of $31,290.83, composed of $28,119.17, representing a share of the county capital school fund, and $3,171.66, representing relator's share of the capital school fund of the township of which relator is a part.

By an Act of Congress on March 6, 1820, (3 U. S. Stat. 545; Vol. 28, Mo. R. S. A., Const., p. 215) the people of the Missouri Territory were authorized to form a constitution and state government and to be admitted as such a state into the Union. This Act also submitted five propositions to the people of the Territory, the first of which was that the section of land numbered sixteen in each township would be granted to the State for the use of the inhabitants of such township, for the use of schools. By an Ordinance of Acceptance, the people of the Territory, in convention assembled, on July 19, 1820, (Vol. 28, Mo. R. S. A., p. 220) accepted these propositions and proceeded to form a state government.

These Acts are the basis of respondent's contention. He assumes the fact, although it is not shown, that the township school funds involved in this case are the moneys received from the sales of these sections of land and the accumulations thereof. Whether this is true we do not know. However, in conformity with a long series of

legislative enactments, the current one being Sections 171.080 and 171.090, Mo. R. S. 1949, township school funds generally were kept separate and distinct from other school funds until the adoption of the Constitution of 1945.

Respondent further contends that a statute enacted in 1945 (Laws 1945, p. 1628; § 171.110, Mo. R. S. 1949) shows that the Legislature construed the constitutional provision under consideration to mean that township school funds are still to be kept intact and separately administered. This act deals with the liquidation of county and township funds and their reinvestment and the *distribution of interest* accruing from such reinvestment. It then provides for the distribution of such interest and other accumulations ''as provided in this chapter.'' It does not purport to cover the *distribution of the principal* of such funds if such a distribution has been authorized by an election under the above quoted constitutional provision, nor does it fix any procedure for such an election. The only method of distribution of township school funds that we find in that chapter is a proviso in Section 161.030, Mo. R. S. 1949, (as amended Laws 1947, Vol. I, p. 497) that all school moneys for the use of schools in any townships or parts of townships and all moneys for the use of schools in any county shall be apportioned upon the last enumeration on file in the office of the county clerk. For reasons hereinafter [304] stated we do not believe this proviso supports respondent's contention.

The pertinent and controlling statute under the facts here involved is an act of 1947 (Laws 1947, Vol. I, p. 285; § 171.030, Mo. R. S. 1949). It prescribes in detail the procedure to be followed in elections held under this constitutional provision for distribution of township and county school funds and further that: ''If the proposal to distribute annually the capital of the liquidated county and township school funds shall receive a majority of the votes cast, the body having control of such county and township school funds shall proceed to thereafter distribute annually such liquidated funds to the school districts. The accumulated balance of such funds shall be apportioned on or before August thirty-first, of each year, until such funds are liquidated and said apportionment shall be based upon the last enumeration on file in the office of the county clerk.'' This is the last expression of the Legislature on the subject of the distribution of both the principal and accumulations of liquidated township school funds. Significantly, it provides that the apportionment of these funds on distribution *shall be based upon the last enumeration on file in the office of the county clerk*. For many years, the statutory enumeration of school pupils has been made by school districts. Section 164.030, Mo. R. S. 1949. We have not been cited to nor have we found any authorization for any board or official to make the enumeration of school pupils by townships.

On the other hand, Section 171.030 clearly and definitely provides for distribution of the merged funds (county and township) in accordance with the method prescribed by Section 164.030 for distribution of County school funds, to-wit: the school district enumeration lists on file in the county clerk's office.

More to the point, however, is the wording of the constitutional provision itself. After directing the liquidation of all township and county school funds and prescribing the method of reinvestment thereof, it further provides that they shall be *sacredly preserved as a county school fund*. There can be no doubt of the meaning of that provision. Township and county school funds are thereby merged into one fund, to-wit: a county school fund. So, therefore, when the investments belonging to the county and township school funds of Callaway County were liquidated, in accordance with the constitutional mandate, they became a county school fund. It is unthinkable that when the electors elected to have this county school fund distributed annually, it would again amoeba-like divide into township funds and a county fund so as to require township funds to be distributed on a township basis and the county fund on a county basis. The further wording of the provision states specifically otherwise. It says: "All interest accruing from investment of *the county school fund* * * * shall be distributed annually to the *schools of the several counties* * * *." Thus, after liquidation of the formerly separate and distinct county school fund and township school funds, both the proceeds of principal and the accruing interest become one fund, namely: the county school fund.

Furthermore, even if we assume that current township school funds represent, either in whole or in part, the proceeds realized from the original land grants, yet we still do not think that in so construing Section 7, Article IX, we do violence to the true purpose of the grants. In 1820, the Missouri Territory was the frontier of the West. Large portions of it were undeveloped, unexplored, uncharted. There were no state or county school systems; and for many years there were not to be. Communities were few and widely separated. Each community had to establish its own school system. It was only by making funds available to each community that a school system could be inaugurated.

Shortly after Missouri was admitted into the Union, this court held that these grants were absolute conveyances in praesenti and not restricted by any condition subsequent. Maupin v. Parker, 3 Mo. 310; Payne v. St. Louis County, 8 Mo. 473, 474. It is true [305] that in so holding the court said in both cases that funds realized from the sale of these lands were to be held in trust for the benefit of the inhabitants of the respective townships for the use of schools, but it must be remembered that there then existed no other means of administering them; and, of course, money received from the sale

of lands in one township would not be diverted to the use of a separate and distinct community in another township. These communities, insofar as schools were to be maintained, had not as yet become integral parts of a larger whole.

It would serve no purpose to trace the development of our public school system from these township nuclei to the system of today. The curious are referred to the article on "Education" in Floyd C. Shoemaker's "Missouri and Missourians", Chapter 66, Volume II, where it is admirably set forth. The first state appropriation was made for public schools in 1853. By that act the duties of the township commissioners were transferred to the county clerks, and the school district supplanted the township as an administrative unit. Such is the law today. Since 1853, townships, as such, have had little function in our school system. In the meantime, the entire concept of public school administration has undergone great changes. No longer are schools administered as separate units. Each is a part of a cohesive whole. The properties of each school are vested in the State for the benefit of its entire citizenry.

"A school district, being an auxiliary of the state for purposes of education, the legislature may provide for its creation, control, and regulation, without violating the due process guaranty, with respect to the property rights of the district or of property owners therein, * * .*. A statute abolishing school districts and vesting the property thereof in towns is not a taking of property without due process of law, if the property is devoted to no new use." 16 C. J. S., Constitutional Law, § 604, p. 1209.

In School District of Oakland v. School District of Joplin, 340 Mo. 779, 102 S. W. 2d 909, 910, it was held: "They [school districts] are public corporations, form an integral part of the state, and constitute that arm or instrumentality thereof discharging the constitutionally intrusted governmental function of imparting knowledge and intelligence to the youth of the state that the rights and liberties of the people be preserved. * * * They are supported by revenues derived from taxes collected within their respective territorial jurisdictions and the general revenues of the state collected from all parts of the state. These taxes and such property as they may be converted into occupy the legal status of public property and are not the private property of the school district by which they may be held or in which they may be located." See also State ex rel. Richart v. Stouffer, Mo., 197 S. W. 248; State ex rel. Consolidated School etc. v. Smith, Auditor, 343 Mo. 288, 121 S. W. 2d 160, 162.

We conclude that Section 7, Article IX, of the Constitution of 1945 requires that following liquidation of township funds they should be distributed to the schools of the counties on a school district enumeration basis.

Respondent finally contends that Schedule 5 of the Constitution of 1945 and the due process clause of the fourteenth amendment to the Constitution of the United States prohibit the construction we give to the provision of the Constitution here in question. Schedule 5 provides: "All rights * * * existing * * * prior to the adoption of this Constitution shall continue to be as valid as if this Constitution had not been adopted." The law as announced in the text and cases above cited disposes of both contentions adversely to respondent.

The alternative writ of mandamus is made permanent. All concur.