**P.L.S. A Minor Child by and Through Donna SHELTON, her Mother and Next Friend, Appellant,**

v.

**Chris KOSTER, Attorney General of the State of Missouri; and Kelvin L. Simmons, Commission of Administration, State Of Missouri, Respondents.**

**No. WD 73275.**

Missouri Court of Appeals, Western District.

Dec. 13, 2011.

As Modified Jan. 31, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 31, 2012.

Application for Transfer Denied April 3, 2012.

Kenneth Allen Wagoner, West Plains, MO, for appellant.

Ronald R. Holliger, Jefferson City, MO, for respondents.

Division Three: JAMES E. WELSH, P.J., JAMES M. SMART, JR., and JOSEPH M. ELLIS, JJ.

JAMES M. SMART, JR., Judge.

This case presents the issue of whether the holder of a judgment obtained against a school district's former bus driver is entitled to collect that judgment from the

State Legal Expense Fund, established by section 105.711 RSMo.[1]

### *Factual Background*

In the fall of 2006, Robert Griffith, a school bus driver for the Doniphan R–I School District, molested a four-year-old preschool girl ("the Child" or "the Plaintiff") while she was on the school bus. Griffith was prosecuted, convicted, and sentenced to incarceration. The Child, through her mother and next friend, sued Griffith in U.S. District Court under 42 U.S.C. § 1983 for violation of the Child's civil rights. She did not sue the School District, the school board members, or the State of Missouri. Griffith was sued as an individual and not in an official capacity. Griffith defaulted. The court entered judgment in the Child's favor against Griffith in an individual capacity, reciting that Griffith had been hired by the School District to provide transportation and that his actions "arose out of his official duties in behalf of the State of Missouri."

Thereafter, the Child brought another action—a declaratory judgment action—in circuit court. The named defendants were Chris Koster, Attorney General, and Kelvin Simmons, Commissioner of Administration. Koster, as Attorney General, is assigned certain responsibilities with regard to the State Legal Expense Fund. *See, e.g.,* § 105.716 RSMo. The Commissioner of Administration has the responsibility of making the payments from the Legal Expense Fund. § 105.711.5. The Child sought in her action a declaration that the State Legal Expense Fund is obligated to satisfy the judgment entered against Griffith individually in United States District Court.

---

1. Statutory references are to the Revised Statutes of Missouri (RSMo) 2000, as updated by the 2010 Cumulative Supplement, except where otherwise noted.

The petition in the circuit court alleged that Griffith had requested that a defense be provided by the Fund and that the Attorney General had declined to provide a defense. Plaintiff stated that the School District is an "agency or arm of the State, created by statute, and that therefore the judgment awarded is covered by the State Legal Expense Fund."

Defendants, in their response, admitted the fact that Griffith was a bus driver employed by the School District, and admitted that Griffith molested Plaintiff. Defendants denied, and still do not concede, that Griffith's conduct "arose out of or was performed in connection" with any "official duty on behalf of the State of Missouri." The Defendants affirmatively pleaded that Plaintiff's petition failed to state a claim upon which relief could be granted, that Plaintiff's claims were subject to governmental immunity, and that Plaintiff has an adequate remedy at law.

Thereafter, Plaintiff moved for summary judgment in her behalf. The State also moved for summary judgment. The trial court, after consideration of the dispositive motions, agreed with the Defendants, entering judgment for Defendants.

The Plaintiff appeals.

### Standard of Review

The parties agreed as to the essential facts and submitted the case on competing motions for summary judgment. Therefore, our review is *de novo*. *See ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

■■ This is a case of statutory construction, in that the disposition of the case as submitted hangs on the meaning of the phrase "agency of the state." Thus, we apply the rules of statutory interpretation, but we do not do so "haphazardly or indiscriminately" in order to achieve a desired result. *See Goerlitz v. City of Maryville*, 333 S.W.3d 450, 455 (Mo. banc 2011). "Instead, the canons of statutory interpretation are considerations made in a genuine effort to determine what the legislature intended." *Id.* The primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute. *Id.* Legislative intent also is "determined by considering the whole act and its purposes and by seeking to avoid unjust or absurd results." *Neske v. City of St. Louis*, 218 S.W.3d 417, 424 (Mo. banc 2007). "In determining the meaning of a particular statute, [we] may look to the established policy of the legislature as disclosed by a general course of legislation." *Id.* "All consistent statutes relating to the same subject are construed together as though constituting one act, and [t]he rule of construction in such instances proceeds upon the supposition that the statutes in question are intended to be read consistently and harmoniously in their several parts and provisions." *Id.* (internal quotations omitted). And to the extent that section 105.711 constitutes a waiver of sovereign immunity, it is to be strictly construed. *Ford Motor Co. v. Dir. of Revenue*, 97 S.W.3d 458, 461 (Mo. banc 2003).

### "Agency of the State"

Plaintiff does not contend that Griffith was an "officer or employee of the State of Missouri" as to whom a duty extends under section 105.711.2(2). Rather Plaintiff asserts that Griffith was an employee of an "agency of the state" under that same subsection. Both parties treat the case as boiling down to that one legal issue: whether a public school district is an "agency of the state" for purposes of the

State Legal Expense Fund.[2]

### State Legal Expense Fund

Sections 105.711–105.726 create the "State Legal Expense Fund," which consists of sums appropriated by the General Assembly and any funds otherwise credited to the Fund by certain departments pursuant to section 105.716. The assets in the Fund are to be available for the payment of any claim, or any amount required by any final judgment against (1) the State, or any agency of the State (to the extent that the claim against the State is authorized pursuant to section 537.600, the sovereign immunity statute); and (2) against "any officer or employee of the State or any agency of the State," as provided and as limited in the statute.

Because issues of statutory interpretation as to particular sections are addressed best when those sections are considered in light of the entirety of the relevant statutory scheme, we must consider the operative language in light of all the provisions relating to the State Legal Expense Fund. *See Neske,* 218 S.W.3d at 424 (the court may look to the established policy as disclosed by a "general course of legislation").

■ In 1983, the State created the Legal Expense Fund to replace the "Tort Defense Fund," section 105.710 RSMo Supp.1982, repealing the former statute at the same time.[3] The Legal Expense Fund statutes have been amended on multiple occasions since that time. Also, along the way, the legislature enacted a similar statute (sections 537.700, *et seq.*) designed to

---

**2.** Some issues have been addressed in previous judicial decisions which are not challenged by either party. As for the issue of determining what kind of public entity might be an "agency of the state," the Supreme Court held in *Smith v. State,* 152 S.W.3d 275, 279 (Mo. banc 2005), that the St. Louis Board of Police Commissioners was an "agency of the state" based on a "structural analysis of the statutes creating the Board." *Smith* which was legislatively overturned, is discussed in detail *infra.* As to the operation of the Fund, in *Dixon v. Holden,* 923 S.W.2d 370 (Mo.App.1996), this court held that the Legal Expense Fund was not only a potential indemnity fund for the benefit of a state official, but also that the Fund could be accessed by the judgment creditor (who has standing to bring a declaratory judgment action) for the collection of the judgment against the state officer and tortfeasor. The court also held that a federal judgment for violation of civil rights (in that case, the right to be free from illegal wiretapping) was covered by the Legal Expense Fund. In *Betts–Lucas v. Hartmann,* 87 S.W.3d 310 (Mo.App.2002), the court held that a woman who obtained a judgment for the wrongful death of her brother (who was a resident of a habilitation center operated by the Department of Mental Health) against an employee of the DMH could obtain compensation for the judgment from the Fund. In *State ex rel. Cravens v. Nixon,* 234 S.W.3d 442

(Mo.App.2007), an inmate of the Department of Corrections had obtained a federal judgment against an employee of the DOC for violation of his civil rights as a prisoner to be free of cruel and unusual punishment. When the judgment creditor made demand on the Legal Expense Fund for payment of the judgment and payment was declined, the judgment creditor sought a writ of mandamus to obtain satisfaction of the judgment. One question not answered thus far in the cases is whether the State Fund is bound by a federal court's findings as to whether the tortfeasor's conduct "arose out of and was performed in connection with official duties" on behalf of the State of Missouri, when the interests of the State of Missouri were not represented in the federal litigation. *See Cravens,* 234 S.W.3d at 448 (court did not address issue because the circuit court made its own independent findings).

**3.** Section 105.710, RSMo Supp.1982, the "Tort Defense Fund" statute, authorized the Commissioner of Administration to pay judgments and settle claims against certain state employees "for acts arising out of and performed in connection with their official duties in behalf of the state." Payment was limited to $100,000, and no payment was to be made for claims connected with the operation of a motor vehicle.

provide protection for employees of municipalities and other political subdivisions in Missouri. Both of these statutes amount to a partial waiver of the sovereign immunity applicable to the state to the extent that it provides for payment of a judgment obtained against a governmental officer or employee. *See State ex rel. Cravens v. Nixon*, 234 S.W.3d 442, 449 (Mo.App.2007).

The first reported Missouri judicial decision construing the portions of the Legal Expense Fund statute pertinent to this case came in *Dixon v. Holden*, 923 S.W.2d 370 (Mo.App.1996). *Dixon* held that a judgment creditor having a judgment against two senior highway patrol officers for violation of his civil rights under 42 U.S.C. § 1983 could collect his judgment directly from the State Legal Expense Fund. In reviewing the statutory provisions, the court described the main operative terms as follows:

> First, section 105.716 provides for a legal defense of employees covered by the Fund. Second, section 105.721 provides for the purchase of insurance for the State of Missouri, its agencies, officers, and employees. Third, section 105.711 provides for the payment of judgments against various employees and the State under section 537.600.

*Id.* at 381. The *Dixon* court then opined:

> All of these statutory purposes seem to flow from one policy-to promote governmental efficiency and protect State business by protecting employees.

*Id.*

Other cases have followed *Dixon*'s understanding of the Act and have addressed similar issues. The issue before us in this case (whether a public school district is an "agency of the state" for Fund purposes) has not been directly addressed. The reported Missouri cases previously decided involved highway patrol officers (*Dixon*), state hospital workers employed by the Department of Mental Health (*Betts–Lucas*[4]), employees of the Missouri Department of Corrections (*Cravens*[5]), and members and employees of the St. Louis Board of Police Commissioners (*Smith*[6]).

Plaintiff in this case claims that the School District is an "agency of the state" for purposes of the Legal Expense Fund. The State counters with the observation that public school districts have been created as political subdivisions of the State, not as executive agencies, and school districts are not "agencies" except where a statute may specifically provide otherwise. Employees of political subdivisions, the State points out, have generally not been considered employees of "state agencies." The State suggests that to interpret "state agency" for Fund purposes to include a local school district would be a huge departure from the prevalent understanding of the statute.

Plaintiff argues that the decision in this case can be limited to school districts as public entities carrying out the state's commitment to education, as highly regulated "agents" of the state. Plaintiff points to the State's broad role in educational curriculum development and in funding, including funding specifically for transportation.

With those comments in mind, we take a closer look at the entirety of the pertinent statutory section, which we attach hereto as an addendum to the opinion. We also

---

**4.** 87 S.W.3d 310 (Mo.App.2002); *see supra* fn. 2.

**5.** 234 S.W.3d 442 (Mo.App.2007); *see supra* fn. 2.

**6.** 152 S.W.3d 275 (Mo. banc 2005); *see supra* fn. 2.

must consider the statute in question in the light of other statutes, including 537.600 and 537.700, *et seq.*, dealing with related subject matter. We also, in order to allow the reader to follow our effort to grapple with these complex and lengthy provisions, seek to set forth a somewhat *condensed* (but still, unfortunately, lengthy) version of section 105.711 and Chapter 105's immediately related sections.

### Pertinent Provisions of 105.711 in Condensed Form

First, we look to section 105.711 itself. Section 105.711.1 creates the Fund, consisting of funds appropriated by the General Assembly (and otherwise credited to the Fund through reimbursements provided by certain departments as to claims against those departments or any officer or employee thereof).

In condensed form, section 105.711.2 provides generally that the Fund:[7]

> ... **shall be available for the payment of any claim or any amount required by any final judgment rendered by a court of competent jurisdiction against:**

**(1) the State of Missouri, or any agency of the State, pursuant to section 537.600;[8] and**

**(2) any officer or employee of the State of Missouri or any agency of the State, including without limitation, elected officials, appointees, members of state boards or commissions, and members of the Missouri National Guard upon conduct of such officer or employee arising out of and performed in connection with his or her official duties on behalf of the state, or any agency of the state; and**

**(3)(a) any licensed healthcare provider employed by the State of Missouri or any agency of the State who is under formal contract to provide disability reviews on behalf of the Department of Elementary and Secondary Education, or to provide services to patients or inmates of state correctional facilities on a part-time basis; and**

**(3)(b) and (c) any physicians employed by a city or county health department or a federally funded community health center for medical care, for pregnancy, delivery, and child**

---

7. In the interest of condensing the pertinent statutory provisions while maintaining readability, we have taken the liberty of dropping the quotation marks in most places while still trying to maintain fidelity to the language by using the direct language of the statutes whenever feasible. To view the exact statutory language (free of any editing), reference may be made to the appendix to this opinion.

8. Section 537.600 re-established the sovereign immunity that existed in the state prior to September 12, 1977, but provided for two specific kinds of claims as to which sovereign immunity was expressly waived:
   (1) Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles within the course of their employment;

(2) Injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition. § 537.600(1) and (2), RSMo 1978.

care, if the physician is not compensated, or if the program is paid only by a government agency except for patient co-payments established by law; and (3)(d) any healthcare provider who provides treatment at a city or county health department or non-profit community health center; and (3)(e) any healthcare provider who provides treatment without compensation to students of a school, whether a public, private, or parochial elementary or secondary school; and (4) staff employed by the juvenile division of any judicial circuit.

In addition to the foregoing provisions, the Act provides in 105.711.4 that payments from the Fund are to be made by the Commissioner of Administration, with the approval of the Attorney General. Throughout the Act are various provisions related to limitations on the dollar amounts that may be paid for claims.

Section 105.716.1 also provides for the Attorney General to investigate, defend, negotiate, and compromise any claims, except as to claims against those entities that maintain their own legal counsel.[9] The statute also provides that all persons and entities protected by the Fund must cooperate with the attorneys investigating or defending the claim. § 105.716.2. The Act also provides that the Fund may protect any public college whose governing body "has declared a state of financial exigency." § 105.716.3. The statutes provide also that the Attorney General may hire separate legal counsel to provide a defense when the Attorney General determines that a conflict exists or particular expertise is required. § 105.716.4.

Section 105.721 authorizes the Commissioner of Administration to purchase insurance against the potential liabilities and governs the purchase of such insurance. Section 105.726 provides that nothing in the foregoing provisions shall be construed to broaden the liability of the State of Missouri beyond the limitations imposed in sections 537.600 to .610 (governing sovereign immunity). It also provides that sections 105.711 to 105.726 do not waive the sovereign immunity of the State of Missouri.

### Ordinary Meaning and Technical Meaning

We turn to the definitions of the word "agency" in the dictionary to which Plaintiff refers us: WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 40 (3d. ed.1971). The first two definitions given are (1) the "capacity, condition or state of acting or of exerting power," and (2) "a person or thing through which power is asserted or an end is achieved." Plaintiff argues that the broad ordinary meaning given as (2) above—something "through which power is asserted or an end is achieved"—should guide us because it is the ordinary definition of "agency." Plaintiff forgets, however, that the same WEBSTER'S definitional article provides three other definitions of the word "agency," one of which is "a department or other administrative unit of a government," and provides, as an example, the following phrase: "the War Department, the only *agency* equipped to administer occupied areas."

Contrary to Plaintiff's argument, we do not *inevitably* interpret the words of a statute according to the ordinary and usual sense:

Words and phrases shall be taken in their plain or ordinary and usual sense,

9. Because it is apparently now common for agencies to have attorneys, but not many have their own litigation counsel, perhaps the phrase "legal counsel" in this context means litigation counsel.

but technical words and phrases *having a peculiar and appropriate meaning in law shall be understood according to their technical import.*

§ 1.090 (emphasis added). Here, accordingly, we seek to determine whether the word "agency" is used in the ordinary, usual sense, or whether it is used in a more technical, governmental sense. As we proceed, we seek clues to the intention of the General Assembly as to the reach of section 105.711.

### A School District is Part of State Government

Plaintiff makes much of the fact that in the 1924 case of *City of Edina v. School District,* 305 Mo. 452, 267 S.W. 112 (1924), the Supreme Court held that school district buildings were not subject to taxation by local authorities because they were "part of state government." *Id.* at 115. Plaintiff also cites other decisions which it argues are to a similar effect because they regard school districts as essentially part of the state government. *See, e.g., Savannah R–III Sch. Dist. v. Pub. Sch. Ret. Sys.,* 950 S.W.2d 854 (Mo. banc 1997); *State ex rel. Sch. Dist. of Fulton v. Davis,* 361 Mo. 730, 236 S.W.2d 301 (1951). Certainly, school districts are governmental instrumentalities of the state and serve important governmental purposes. They are "agencies of the state" in the ordinary and usual sense of the word "agency"; and it has been said that they form "an integral part of the state, and constitute that arm or instrumentality thereof discharging the constitutionally [e]ntrusted function of imparting knowledge and intelligence to the youth of the state[.]" *Davis,* 236 S.W.2d at 305; *see also State ex rel. McKittrick v. Whittle,* 333 Mo. 705, 63 S.W.2d 100, 102 (Mo. banc 1933). But they are also "political subdivisions." *Whittle,* 63 S.W.2d at 102 (rejecting the argument that school districts are not po-

litical subdivisions for purposes of construing an anti-nepotism statute).

Thus, a school district is not an "agency of the state" in the same way that we understand a department or a division of the machinery of state government to be. Let us not forget that, generally, the school districts, with minor exception, while *authorized* by the General Assembly, are, like other political subdivisions authorized by law, generally formed by the vote of the citizenry in the geographic area desiring to establish the district. *See, e.g.,* § 162.211. "The subdivision of the state into counties and school districts [is to] . . . enable the people of the territory . . . to govern and manage their own local affairs." *City of Kansas City v. Vineyard,* 128 Mo. 75, 30 S.W. 326, 327 (1895).

### Summary of Pertinent Provisions of MOPERM Statute

As we continue to consider all statutes bearing on a related subject matter, we turn first to a statute that neither party mentions, but which we believe is pertinent. We examine the Missouri Public Entity Risk Management Fund statute, sections 537.700, *et seq.* We find this statute (the MOPERM statute) relevant to our determinations because the MOPERM Fund was created by the legislature to function (in part) in a fashion similar to that of the State Legal Expense Fund—to pay and settle tort claims against "any officer or employee" of a participating "public entity" voluntarily participating in MOPERM "when the claim is upon conduct of such officer or employee arising out of and performed in connection with his or her official duties on behalf of the participating public entity." § 537.705.1(2). The key thing to note about the MOPERM statute is that the phrase "public entity" in that statute does *not* include state officers and state "agencies" (as section 105.711

specifically *does* ), but *specifically* includes "*local* public bodies," including "*school districts* " and other "political subdivisions." [10] (Emphasis added.)

It is somewhat striking, if we put 105.711, *et seq.,* and 537.700, *et seq.,* together, side by side, to note that the liability of officers and employees of "*agencies of the state* " is addressed in 105.711 (the "Fund statute"), while the liability of officers and employees of *school districts* and other local governmental entities is addressed in 537.700 (the "MOPERM statute"). When the General Assembly adopted the MOPERM statute in 1986, it was already aware of the general sovereign immunity provisions related to all public entities (section 537.600), including political subdivisions and the state itself, and it was also aware of the Fund statute (adopted three years earlier), providing protection for employees of "agencies of the state."

The first thought coming to mind is that the MOPERM statute was designed to provide a mechanism for the defense of the various local government employees who were excluded from the scope of the Fund statute, section 105.711. Logically, if the General Assembly had intended for school districts to be included within the meaning of "agencies of the state" in 105.711, it

would not have been necessary to specify in 537.705 of the MOPERM statute that *school districts* are entities whose employees will be protected by MOPERM (to the extent that the respective school districts contribute voluntarily to the MOPERM fund). Yet the General Assembly deliberately chose to specify *school districts* and other political subdivisions as entities statutorily invited to participate in MOPERM for the protection of their officers and employees.

Plaintiff nevertheless argues that the Doniphan R–I School District is an "agency of the state," because (1) school districts are established and maintained by the General Assembly to carry out its constitutional mandate to establish and maintain public schools; (2) instruction is governed by the State Board of Education; (3) school districts answer to the state and not to the municipality or county in which they are located; and (4) the Missouri Supreme Court has stated that school districts are "part of the state government" and their property is not subject to local taxation because the property is "vested in the state for the benefit of its entire citizenry." [11]

We also consider that if section 105.711 (the Fund statute) had been intended to

---

10. Section 537.700.2(3) provides that "public entity" means "any city, county, township, village, town, municipal corporation, school district, special purpose or taxing district, or any other local public body created by the general assembly."

11. Plaintiff argues for a broad interpretation, pointing out that section 105.711.2(2) uses the phrase "including without limitation" in mentioning various officials for whom the Fund protection is designed. The phrase "including, without limitation," would logically mean, "in addition to those already specified, others *of the same kind or character, although they are not specifically named or identified."* It is important to note that the phrase does

not modify the word "agencies," but modifies the words "officers and employees." Thus, it would refer to "*any* officer or employee of the State of Missouri or any agency of the state," even though the officer or employee is not specified by a named title. Thus, a bus driver or a janitor could be included. But it does not answer the question as to what the legislature meant by the phrase "agency of the state." Plaintiff does not go so far as to argue that it means "including, without limitation," every person working for any *public entity* in Missouri. And we find, for reasons expressed more fully herein, that it is unlikely that it was intended to include all public entities having employees.

cover all public entities having employees, we would expect it, like 537.600 and 537.700, to use the broad terms "public entities" and "public employees." In interpreting statutes,

> it is appropriate to take into consideration statutes involving similar or related subject matter when such statutes shed light upon the meaning of the statute being construed, even though the statutes are found in different chapters and were enacted at different times.

*Citizens Elec. Corp. v. Dir. of Dept. of Revenue*, 766 S.W.2d 450, 452 (Mo. banc 1989).

■ In this regard, the State emphasizes that political subdivisions are not "agencies of the state" for purposes of the Fund. Counties, for instance, are not considered "agencies of the state" for Fund purposes, *see, e.g., Cates v. Webster*, 727 S.W.2d 901 (Mo. banc 1987), although they too, like school districts, are obviously instrumentalities of state government in general.

The phrase "state agency" or "agency of the state," in statutory and legal terminology, often refers to a division or a department of state government performing (typically) the functions of the executive branch of state government. For instance, in Chapter 33 (dealing with the administration of the state budget), in the portion of that chapter establishing the Minority Business Development Commission, the term "state agency" refers to:

> an authority, board, branch, commission, committee, department, division or other

instrumentality of the *executive branch* of state government.

§ 33.750(3)(6) [12] (emphasis added).

We note also that for purposes of Chapter 36, the State Personnel Law (Merit System), the terms "agency," "state agency," and "agency of the state" are defined to specifically *exclude* "**offices of the elected officials, the general assembly, the judiciary and academic institutions.**" § 36.020(1). The employees of school districts (and those of other political subdivisions) are thus expressly *excluded* from the reach of the State Personnel Law (the "Merit System"), which is applicable to employees of "agencies of the state." Further, we note that the Missouri Administrative Procedure Act (Chapter 536) excludes school districts from the definition of "state agency." § 536.010(8).[13] We also note that employees of other entities that are considered political subdivisions are also excluded from the State Personnel Law.

School districts are not typically regarded as a division or department of state government, but, as already mentioned, are considered legally separate, special-purpose, local governmental subdivisions with powers similar to those of a town, village, or county, including the ability to levy taxes. *Sch. Dist. No. 7 v. Sch. Dist. of St. Joseph*, 184 Mo. 140, 82 S.W. 1082, 1086 (Mo. banc 1904); *see also* 67B Am. Jur.2d *Schools* § 21 (2010). Because of the special-purpose, local nature of school districts, one wonders whether school dis-

---

**12.** Sections 33.750–.756 are designed to assist minority businesses in obtaining state contracts and federal procurements. One of the functions is to receive complaints concerning policies and activities of governmental agencies which adversely affect minority small businesses. *See* § 33.752.6.

**13.** Section 536.010(8) provides that "state agency" means "each board, commission, department, officer or other administrative office or unit of the state other than the general assembly, the courts, the governor, or a political subdivision of the state, existing under the constitution or statute, and authorized by the constitution or statute to make rules or to adjudicate contested cases."

tricts would not have been expressly mentioned in 105.711.2(2) if the General Assembly had intended to include them within the reach of the Fund.[14]

Plaintiff responds with the observation that the terms "agency" and "political subdivision" sometimes seem to overlap in certain statutory provisions. For instance, in a statute dealing with cooperation between and among governmental units, section 70.123(3), the term *"political subdivision"* is defined as *"any agency* or unit of the State which now is, or hereafter shall be, authorized to levy taxes or empowered to cause taxes to be levied." That statutory section obviously uses the term "agency" in an ordinary, usual (non-technical) sense that includes political subdivisions. Thus, Plaintiff suggests, even though a school district may be considered a political subdivision, that fact should not dictate the conclusion that the school district cannot be an "agency of the state" for purposes of 105.711.2(2).

The State counters Plaintiff's observation with its note that another statutory section within the same chapter, 70.210.3 (again dealing with cooperation by political subdivisions), provides a definition of "political subdivision" that specifically includes *school districts,* as follows:

> Counties, townships, cities, towns, villages, *school,* county library, city library, city-county library, road, drainage, sewer, levee and fire *districts,* soil and water conservation districts, watershed subdistricts, county hospitals, and any board of control of an art museum, and any other public subdivision or public corporation having the power to tax.

(Emphasis added.) We see, thus, that various definitions are limited in application to a specific context, and the use of terminology in unusual or restrictive statutory contexts cannot be viewed as establishing that *all* statutes *always* use the term "agency" either in an ordinary, usual way, or in a more technical, governmental way.

Also, we are mindful that regardless of whether the phrase was intended in an ordinary sense or in a sense peculiar to governmental law, we are to "strictly construe" it to the extent that it is a waiver of sovereign immunity.[15] *See Sprint*

---

**14.** Neither party addresses the possible constructions of any portion of section 105.711 other than 105.711.2(2), which deals with officers and employees of the state or any agency of the state. We note, however, that in this lengthy statute (covering many things) school districts *are* specifically mentioned one time—in section 105.711.2(3), when they are mentioned in connection with *medical services* donated to school districts or county or city health departments or federally funded community health clinics. We note also that no entities we recognize as political subdivisions are mentioned except as to the provision of medical services by a healthcare provider. Neither party discusses this. It *may* be that school districts (and other political subdivisions and publicly funded health clinics) have difficulty purchasing medical malpractice insurance in connection with donated medical services. Thus, those entities *may need* the help of the Fund for either the purchase of insurance or, if insurance is not available, the

negotiation and payment of claims and judgments. We are thus doubtful that the express inclusion of school districts and other political subdivisions in .2(3) is particularly relevant to our construction of .2(2).

**15.** The waiver extends to claims against officers and employees, but not as to the sovereign immunity of the state itself. The Court in *Smith* held that the state, in 105.711, was waiving sovereign immunity even as to claims against the state itself, not only as to claims brought against officers and employees. *Smith,* 152 S.W.3d at 279. The Court in *Smith* affirmed the monetary award that had been entered against the state. *Id.* Thereafter, the General Assembly adopted language apparently designed to make clear that the waiver did not apply to claims for damages against the state itself: "Sections 105.711 to 105.726 do not waive the sovereign immunity of the State of Missouri." § 105.726.1 RSMo, 2010 cum. supp.

*Commc'ns Co., L.P. v. Dir. of Revenue,* 64 S.W.3d 832, 834 (Mo. banc 2002).

Plaintiff concedes that a county (which is generally considered a political subdivision) is not a "state agency" for Fund purposes, noting that in *Cates v. Webster,* 727 S.W.2d 901 (Mo. banc 1987), a bailiff who was paid by the county was not an employee of an "agency of the state." *Id.* at 905–07.

Plaintiff's most plausible argument is based on an extrapolation from the *Smith* case, decided in 2005 by the Supreme Court and subsequently legislatively overruled, holding that the Board of Police Commissioners of St. Louis was an "agency of the state" for Fund purposes. 152 S.W.3d at 278.[16] Of course, the prompt action of the legislature in overruling *Smith* speaks loudly as to the legislative intent, at least as to the intent to exempt the Fund from responsibility for future claims against the Police Board. Plaintiff, in her resourceful brief on appeal, nevertheless argues that a comparison can be made between the Board of Police Commissioners and the School District, in that both have specific functions, and the General Assembly has adopted numerous statutory requirements relating to both. Plaintiff points out that the state pays most of the cost of providing transportation to students, citing section 163.161, and mentions that state law requires transportation of students whose homes are located a certain distance from the school, citing

section 167.231. Also, says Plaintiff, section 304.060 provides that the State Board of Education shall adopt regulations concerning the design and operation of school buses, which it did (with the regulations at 5 C.S.R. 30–261–010, *et seq.*).[17]

We disagree with Plaintiff, however, that the state's relationship to the Board of Police Commissioners of St. Louis is comparable to the state's relationship to its school districts. In *Smith,* the Court specifically based its ruling on the fact that the legislature intended for the police entity in St. Louis, unlike those operating in most Missouri cities, to operate entirely independently of the City of St. Louis. 152 S.W.3d at 278. The Police Board was established by the legislature, and the members of the Board were to be appointed by the governor,[18] and were subject to removal for misconduct by the governor.[19] The Police Board is answerable *exclusively* to the governor and the legislature, which has immediate access by law to all the records of the Police Board.[20] Also, in contrast to the employees of school districts and of other political subdivisions, the General Assembly strictly regulates by legislation the number of officers of each rank and the pay allowed the officers of each rank.[21] Accordingly, we observe that in terms of its relationship to state authorities, the St. Louis Board of Police Commissioners is constituted more like a department or division of the executive branch of

---

16. The General Assembly, in explicit response to *Smith,* amended section 105.726.3 to effectively reverse the decision in *Smith.*

17. It is agreed that Griffith's paycheck came from the School District, not from the State, although the State may have provided funding that helped make the paycheck possible. There is no argument that Griffith was not an employee of the School District. The School District is charged with the duty of hiring bus drivers, providing transportation, and design-

ing routes. *See Webb v. Reisel,* 858 S.W.2d 767, 770 (Mo.App.1993).

18. § 84.030.

19. § 84.080.

20. § 84.250.

21. §§ 84.150–.160. Similar provisions are applicable also to the Kansas City Board. *See* §§ 84.350–.860.

state government than it is like a political subdivision. That is obviously why the Supreme Court stated that it was reaching its decision (as to the applicability of the Fund statute) on the basis of the "statutory structure" of the Board. *Id.*

It is true that the school districts have a separate legal existence from the municipalities and counties in which they are situated, and it is true that the curriculum and various activities of school districts are regulated in various ways by the state,[22] but, as we have noted, the school districts generally become a legal entity by the action of the constituent voters, who also elect governing board members. The school district voters thus *share* oversight of the school district with the state board of education and the legislature. The district is certainly not *exclusively* answerable to the governor and the legislature. The hiring of employees, including bus drivers, the levying of taxes, and so forth, are also subject to the control of the citizen constituency in the district through their elected representatives. *Webb v. Reisel,* 858 S.W.2d 767, 770 (Mo.App.1993).

▮ Plaintiff also makes an argument based on the fact that a public high school, when seeking to impose substantial disciplinary sanction on a student, has been held to be required by the due process clause to provide a hearing to a high school student under the "contested case" provisions of Chapter 536, the Missouri Administrative Procedure Act (MAPA). *State ex rel. Yarber v. McHenry,* 915 S.W.2d 325, 327 (Mo. banc 1995). Thus, points out Plaintiff, the school is constituted an "agency" for purposes of MAPA. A school is required to operate reasonably with due process when dealing with fundamental rights of citizens, and to that extent it is an "agency." *Id.* But school districts are not bound by the provisions of Chapter 536 that are pertinent to "state agencies." "State agency" is a phrase that is separately defined in Chapter 536 as specifically *excluding, inter alia,* political subdivisions of the state.[23] *See* 536.010(2) (defining "agency") and 536.010(8) (defining "state agency"). Because school districts are local political subdivisions, school districts are not "state agencies" for purposes of Chapter 536 and, thus, are not required to observe such requirements as the promulgation of formal rules after public comment, as the executive agencies of the state must.

We also note that if the school districts and all other governmental entities were hypothetically constituted "agencies of the state" for Fund purposes, and therefore chose not to participate by providing funding for MOPERM (because they already have coverage for employees at the expense of the General Assembly through 105.711), then it would fall to the Commissioner of Administration to make insurance decisions and handle appropriated funds for the defense and indemnity of employees of *every public entity,* including every political subdivision, whether a county library, a school district, a municipality, a public corporation, a sewer district, a village, a township, and so forth, as well as every executive agency of the state. In other words, the Commissioner of Administration would be quite busy with coverage issues as to every governmental entity within the state, from the tiniest sewer

---

**22.** Through the advance of time, it seems that the state exercises an increasing amount of authority over local school districts, and to that extent, Plaintiff's argument gains some plausibility, but a school district remains a political subdivision and not a state agency and is explicitly covered by the MOPERM statute. Thus, the argument does not avail.

**23.** *See* fn.12, *supra,* for the definition of "state agency."

district to the largest municipality. Meanwhile, we assume, MOPERM would have little to do, because the school districts and all other political subdivisions would have little or no incentive to participate in MOPERM (for which right they must pay) when they could otherwise receive free coverage funded by the General Assembly's appropriations.

### Conclusion on Point I

■■ We hold that the phrase "agency of the state" is not to be interpreted so as to mean every public entity carrying out state policy, but is to be understood in a particularized way (as the phrases "state agency" and "agency of the state" are understood in Chapters 33, 36, and 536 and other statutory provisions that distinguish political subdivisions from such agencies). This conviction is strengthened when we view section 105.711 side by side with section 537.705 (the MOPERM statute). We believe the trial court was correct that the Fund was not obligated to provide a defense to Griffith, a school district employee. Griffith could have sought a defense from the School District itself, or, if the district was a participant in MOPERM, by MOPERM (unless precluded by an express exclusion in MOPERM's coverage). We conclude that the term "agency of the state" in 105.711 was not intended to include political subdivisions such as school districts.

For all the foregoing reasons, we conclude that Plaintiff has not demonstrated that the trial court erred in determining that the Doniphan R–I School District is an "agency of the state" for purposes of the State Legal Expense Fund.

### Point II

■ In Point II, Plaintiff argues that the trial court erred in its ruling because the Defendants (that is, the Attorney General and the Commissioner of Administration) are bound by the terms of the United States District Court judgment to the effect that the School District is an "*agency or arm of the state,*" and because Griffith demanded that a defense be provided but the Attorney General declined to provide a defense.

Federal jurisdiction in the lawsuit against Griffith was based on 42 U.S.C. § 1983, which is invoked when the defendant is a state actor who acts "under color of state law." *See, e.g., Dixon,* 923 S.W.2d at 373 (highway patrol officers violated right of plaintiff to be free from illegal wiretap). The District Court, in setting forth the basis for its jurisdiction, recited in its judgment that Griffith was "acting under color of state law." The District Court also recited on the basis of the unchallenged complaint that the molestation of the child "arose out of and was performed in connection with [Griffith's] official duties in behalf of the State of Missouri," and that the School District was an "*agency or arm of the state.*"

Plaintiff suggests that because the Attorney General did not provide a defense to Griffith, the Defendants "should be bound" by the foregoing declaration of the court in the underlying judgment. Plaintiff seems to suggest this on principles of equity and insurance contract law, citing *Schmitz v. Great American Assurance Co.,* 337 S.W.3d 700 (Mo. banc 2011), though Plaintiff has no specific non-insurance authority on this contention.

The Defendants respond that it can be misleading to assume that the terms of the federal statutes necessarily precisely overlap in meaning with the terminology of the Missouri statute dealing with the Fund. Moreover, we think the fact that the court used the phrase that the School District was an "agency *or arm* " (emphasis added) of the state suggests that the word "agen-

cy" was used in a broad sense that is not necessarily a sense that overlaps with the limited meaning of the phrase "agency of the state" in the Fund statute.

Further, it has not been established that a recitation in the federal judgment (based on a verbatim adoption of the plaintiff's uncontested pleading) can or should bind the non-parties (the Commissioner of Administration and the Attorney General). *See Cravens,* 234 S.W.3d at 448 (finding it unnecessary to decide in that case whether those defendants were bound by the federal findings because the circuit court adopted its own findings).

In any event, in view of the fact that we have already determined that the allegations of the federal petition (against the bus driver employed by the School District) did not require the Fund to come to the defense of the driver because the School District was not an "agency of the state" for Fund purposes, we cannot say that the Attorney General violated his discretion in withholding a defense, or that he otherwise wrongfully refused to provide a defense. This is not a case involving a contract of liability insurance. The statute did not require of the Attorney General a duty to defend in this instance.[24]

### Conclusion on Point II

For all the foregoing reasons, we are unpersuaded that the Commissioner of Administration and the Fund are bound by the recitations of the U.S. District Court related to whether the molestation arose out of or was performed in connection with Mr. Griffith's "official duties" on behalf of "an agency of the state."

### Ruling

We hold that the Doniphan R–I School District is not an "agency of the state" for purposes of the State Legal Expense Fund. We also hold that the trial court was not bound by the recital of the federal district court judgment to the extent that it purported to find that the school district was an "agency or arm of the state." Therefore, the trial court did not err in its ruling in favor of the Commissioner of Administration and the Attorney General. The judgment is affirmed.

All concur.

### Appendix

Following is the complete text of Section 105.711 as it appears in the Revised Statutes of Missouri, 2010 Cumulative Supplement:

**105.711. Legal expense fund created—officers, employees, agencies, certain health care providers covered, procedure—rules regarding contract procedures and documentation of care—certain claims, limitations—funds not transferable to general revenue—rules**

1. There is hereby created a "State Legal Expense Fund" which shall consist of moneys appropriated to the fund by the general assembly and moneys

---

**24.** The *Dixon* court was uncertain whether, under the statute, the Attorney General could truly reserve rights in providing a cautionary defense. In *Dixon,* the court offered the suggestion that the Attorney General "must be allowed the ability to opt out of the defense of cases and save limited staff resources where the requisite facts for state involvement do not or will not ever be met." 923 S.W.2d at 380. The court suggested, though, that the Attorney General's duties and abilities were not "clearly defined." *Id.* Although the issue is not before us here, and we need not decide it, because the statute implies at least some discretion to the Attorney General as to the provision of a defense (*see* section 105.716.1), we are not sure what would prevent the Attorney General from offering a defense under a reservation of rights.

otherwise credited to such fund pursuant to section 105.716.

2. Moneys in the state legal expense fund shall be available for the payment of any claim or any amount required by any final judgment rendered by a court of competent jurisdiction against:

(1) The state of Missouri, or any agency of the state, pursuant to section 536.050 or 536.087, RSMo, or section 537.600, RSMo;

(2) Any officer or employee of the state of Missouri or any agency of the state, including, without limitation, elected officials, appointees, members of state boards or commissions, and members of the Missouri national guard upon conduct of such officer or employee arising out of and performed in connection with his or her official duties on behalf of the state, or any agency of the state, provided that moneys in this fund shall not be available for payment of claims made under chapter 287, RSMo;

(3)(a) Any physician, psychiatrist, pharmacist, podiatrist, dentist, nurse, or other health care provider licensed to practice in Missouri under the provisions of chapter 330, 332, 334, 335, 336, 337 or 338, RSMo, who is employed by the state of Missouri or any agency of the state under formal contract to conduct disability reviews on behalf of the department of elementary and secondary education or provide services to patients or inmates of state correctional facilities on a part-time basis, and any physician, psychiatrist, pharmacist, podiatrist, dentist, nurse, or other health care provider licensed to practice in Missouri under the provisions of chapter 330, 332, 334, 335, 336, 337, or 338, RSMo, who is under formal contract to provide services to patients or inmates at a county jail on a part-time basis;

(b) Any physician licensed to practice medicine in Missouri under the provisions of chapter 334, RSMo, and his professional corporation organized pursuant to chapter 356, RSMo, who is employed by or under contract with a city or county health department organized under chapter 192, RSMo, or chapter 205, RSMo, or a city health department operating under a city charter, or a combined city-county health department to provide services to patients for medical care caused by pregnancy, delivery, and child care, if such medical services are provided by the physician pursuant to the contract without compensation or the physician is paid from no other source than a governmental agency except for patient co-payments required by federal or state law or local ordinance;

(c) Any physician licensed to practice medicine in Missouri under the provisions of chapter 334, RSMo, who is employed by or under contract with a federally funded community health center organized under Section 315, 329, 330 or 340 of the Public Health Services Act (42 U.S.C. 216, 254c) to provide services to patients for medical care caused by pregnancy, delivery, and child care, if such medical services are provided by the physician pursuant to the contract or employment agreement without compensation or the physician is paid from no other source than a governmental agency or such a federally funded community health center except for patient co-payments required by federal or state law or local ordinance. In the case of any claim or judgment that arises under this paragraph, the aggregate of payments from the state legal expense fund shall be limited to a maximum of one million dollars for all claims arising out of and judgments based upon the same act or acts alleged in a single cause against any

such physician, and shall not exceed one million dollars for any one claimant;

(d) Any physician licensed pursuant to chapter 334, RSMo, who is affiliated with and receives no compensation from a nonprofit entity qualified as exempt from federal taxation under Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, which offers a free health screening in any setting or any physician, nurse, physician assistant, dental hygienist, dentist, or other health care professional licensed or registered under chapter 330, 331, 332, 334, 335, 336, 337, or 338, RSMo, who provides health care services within the scope of his or her license or registration at a city or county health department organized under chapter 192, RSMo, or chapter 205, RSMo, a city health department operating under a city charter, or a combined city-county health department, or a nonprofit community health center qualified as exempt from federal taxation under Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, if such services are restricted to primary care and preventive health services, provided that such services shall not include the performance of an abortion, and if such health services are provided by the health care professional licensed or registered under chapter 330, 331, 332, 334, 335, 336, 337, or 338, RSMo, without compensation. MO HealthNet or Medicare payments for primary care and preventive health services provided by a health care professional licensed or registered under chapter 330, 331, 332, 334, 335, 336, 337, or 338, RSMo, who volunteers at a free health clinic is not compensation for the purpose of this section if the total payment is assigned to the free health clinic. For the purposes of the section, "free health clinic" means a nonprofit community health center qualified as exempt from federal taxation under Section 501(c)(3) of the Internal Revenue Code of 1987, as amended, that provides primary care and preventive health services to people without health insurance coverage for the services provided without charge. In the case of any claim or judgment that arises under this paragraph, the aggregate of payments from the state legal expense fund shall be limited to a maximum of five hundred thousand dollars, for all claims arising out of and judgments based upon the same act or acts alleged in a single cause and shall not exceed five hundred thousand dollars for any one claimant, and insurance policies purchased pursuant to the provisions of section 105.721 shall be limited to five hundred thousand dollars. Liability or malpractice insurance obtained and maintained in force by or on behalf of any health care professional licensed or registered under chapter 330, 331, 332, 334, 335, 336, 337, or 338, RSMo, shall not be considered available to pay that portion of a judgment or claim for which the state legal expense fund is liable under this paragraph;

(e) Any physician, nurse, physician assistant, dental hygienist, or dentist licensed or registered to practice medicine, nursing, or dentistry or to act as a physician assistant or dental hygienist in Missouri under the provisions of chapter 332, RSMo, chapter 334, RSMo, or chapter 335, RSMo, or lawfully practicing, who provides medical, nursing, or dental treatment within the scope of his license or registration to students of a school whether a public, private, or parochial elementary or secondary school or summer camp, if such physician's treatment is restricted to primary care and preventive health services and if such medical, dental, or nursing services are provided

by the physician, dentist, physician assistant, dental hygienist, or nurse without compensation. In the case of any claim or judgment that arises under this paragraph, the aggregate of payments from the state legal expense fund shall be limited to a maximum of five hundred thousand dollars, for all claims arising out of and judgments based upon the same act or acts alleged in a single cause and shall not exceed five hundred thousand dollars for any one claimant, and insurance policies purchased pursuant to the provisions of section 105.721 shall be limited to five hundred thousand dollars; or

(f) Any physician licensed under chapter 334, RSMo, or dentist licensed under chapter 332, RSMo, providing medical care without compensation to an individual referred to his or her care by a city or county health department organized under chapter 192 or 205, RSMo, a city health department operating under a city charter, or a combined city-county health department, or nonprofit health center qualified as exempt from federal taxation under Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, or a federally funded community health center organized under Section 315, 329, 330, or 340 of the Public Health Services Act, 42 U.S.C. Section 216, 254c; provided that such treatment shall not include the performance of an abortion. In the case of any claim or judgment that arises under this paragraph, the aggregate of payments from the state legal expense fund shall be limited to a maximum of one million dollars for all claims arising out of and judgments based upon the same act or acts alleged in a single cause and shall not exceed one million dollars for any one claimant, and insurance policies purchased under the provisions of section

105.721 shall be limited to one million dollars. Liability or malpractice insurance obtained and maintained in force by or on behalf of any physician licensed under chapter 334, RSMo, or any dentist licensed under chapter 332, RSMo, shall not be considered available to pay that portion of a judgment or claim for which the state legal expense fund is liable under this paragraph;

(4) Staff employed by the juvenile division of any judicial circuit;

(5) Any attorney licensed to practice law in the state of Missouri who practices law at or through a nonprofit community social services center qualified as exempt from federal taxation under Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, or through any agency of any federal, state, or local government, if such legal practice is provided by the attorney without compensation. In the case of any claim or judgment that arises under this subdivision, the aggregate of payments from the state legal expense fund shall be limited to a maximum of five hundred thousand dollars for all claims arising out of and judgments based upon the same act or acts alleged in a single cause and shall not exceed five hundred thousand dollars for any one claimant, and insurance policies purchased pursuant to the provisions of section 105.721 shall be limited to five hundred thousand dollars; or

(6) Any social welfare board created under section 205.770, RSMo, and the members and officers thereof upon conduct of such officer or employee while acting in his or her capacity as a board member or officer, and any physician, nurse, physician assistant, dental hygienist, dentist, or other health care professional licensed or registered under chapter 330, 331, 332, 334, 335, 336, 337, or 338, RSMo, who is referred to pro-

vide medical care without compensation by the board and who provides health care services within the scope of his or her license or registration as prescribed by the board.

3. The department of health and senior services shall promulgate rules regarding contract procedures and the documentation of care provided under paragraphs (b), (c), (d), (e), and (f) of subdivision (3) of subsection 2 of this section. The limitation on payments from the state legal expense fund or any policy of insurance procured pursuant to the provisions of section 105.721, provided in subsection 7 of this section, shall not apply to any claim or judgment arising under paragraph (a), (b), (c), (d), (e), or (f) of subdivision (3) of subsection 2 of this section. Any claim or judgment arising under paragraph (a), (b), (c), (d), (e), or (f) of subdivision (3) of subsection 2 of this section shall be paid by the state legal expense fund or any policy of insurance procured pursuant to section 105.721, to the extent damages are allowed under sections 538.205 to 538.235, RSMo. Liability or malpractice insurance obtained and maintained in force by any health care professional licensed or registered under chapter 330, 331, 332, 334, 335, 336, 337, or 338, RSMo, for coverage concerning his or her private practice and assets shall not be considered available under subsection 7 of this section to pay that portion of a judgment or claim for which the state legal expense fund is liable under paragraph (a), (b), (c), (d), (e), or (f) of subdivision (3) of subsection 2 of this section. However, a health care professional licensed or registered under chapter 330, 331, 332, 334, 335, 336, 337, or 338, RSMo, may purchase liability or malpractice insurance for coverage of liability claims or judgments based upon care rendered under paragraphs (c), (d), (e), and (f) of subdivision (3) of subsection 2 of this section which exceed the amount of liability coverage provided by the state legal expense fund under those paragraphs. Even if paragraph (a), (b), (c), (d), (e), or (f) of subdivision (3) of subsection 2 of this section is repealed or modified, the state legal expense fund shall be available for damages which occur while the pertinent paragraph (a), (b), (c), (d), (e), or (f) of subdivision (3) of subsection 2 of this section is in effect.

4. The attorney general shall promulgate rules regarding contract procedures and the documentation of legal practice provided under subdivision (5) of subsection 2 of this section. The limitation on payments from the state legal expense fund or any policy of insurance procured pursuant to section 105.721 as provided in subsection 7 of this section shall not apply to any claim or judgment arising under subdivision (5) of subsection 2 of this section. Any claim or judgment arising under subdivision (5) of subsection 2 of this section shall be paid by the state legal expense fund or any policy of insurance procured pursuant to section 105.721 to the extent damages are allowed under sections 538.205 to 538.235, RSMo. Liability or malpractice insurance otherwise obtained and maintained in force shall not be considered available under subsection 7 of this section to pay that portion of a judgment or claim for which the state legal expense fund is liable under subdivision (5) of subsection 2 of this section. However, an attorney may obtain liability or malpractice insurance for coverage of liability claims or judgments based upon legal practice rendered under subdivision (5) of subsection 2 of this section that exceed the amount of liability coverage provided by the state legal expense fund under subdivision (5) of subsection

2 of this section. Even if subdivision (5) of subsection 2 of this section is repealed or amended, the state legal expense fund shall be available for damages that occur while the pertinent subdivision (5) of subsection 2 of this section is in effect.

5. All payments shall be made from the state legal expense fund by the commissioner of administration with the approval of the attorney general. Payment from the state legal expense fund of a claim or final judgment award against a health care professional licensed or registered under chapter 330, 331, 332, 334, 335, 336, 337, or 338, RSMo, described in paragraph (a), (b), (c), (d), (e), or (f) of subdivision (3) of subsection 2 of this section, or against an attorney in subdivision (5) of subsection 2 of this section, shall only be made for services rendered in accordance with the conditions of such paragraphs. In the case of any claim or judgment against an officer or employee of the state or any agency of the state based upon conduct of such officer or employee arising out of and performed in connection with his or her official duties on behalf of the state or any agency of the state that would give rise to a cause of action under section 537.600, RSMo, the state legal expense fund shall be liable, excluding punitive damages, for:

(1) Economic damages to any one claimant; and

(2) Up to three hundred fifty thousand dollars for noneconomic damages. The state legal expense fund shall be the exclusive remedy and shall preclude any other civil actions or proceedings for money damages arising out of or relating to the same subject matter against the state officer or employee, or the officer's or employee's estate. No officer or employee of the state or any agency of the state shall be individually liable in his or her personal capacity for conduct of such officer or employee arising out of and performed in connection with his or her official duties on behalf of the state or any agency of the state. The provisions of this subsection shall not apply to any defendant who is not an officer or employee of the state or any agency of the state in any proceeding against an officer or employee of the state or any agency of the state. Nothing in this subsection shall limit the rights and remedies otherwise available to a claimant under state law or common law in proceedings where one or more defendants is not an officer or employee of the state or any agency of the state.

6. The limitation on awards for noneconomic damages provided for in this subsection shall be increased or decreased on an annual basis effective January first of each year in accordance with the Implicit Price Deflator for Personal Consumption Expenditures as published by the Bureau of Economic Analysis of the United States Department of Commerce. The current value of the limitation shall be calculated by the director of the department of insurance, financial institutions and professional registration, who shall furnish that value to the secretary of state, who shall publish such value in the Missouri Register as soon after each January first as practicable, but it shall otherwise be exempt from the provisions of section 536.021, RSMo.

7. Except as provided in subsection 3 of this section, in the case of any claim or judgment that arises under sections 537.600 and 537.610, RSMo, against the state of Missouri, or an agency of the state, the aggregate of payments from the state legal expense fund and from any policy of insurance procured pursu-

ant to the provisions of section 105.721 shall not exceed the limits of liability as provided in sections 537.600 to 537.610, RSMo. No payment shall be made from the state legal expense fund or any policy of insurance procured with state funds pursuant to section 105.721 unless and until the benefits provided to pay the claim by any other policy of liability insurance have been exhausted.

8. The provisions of section 33.080, RSMo, notwithstanding, any moneys remaining to the credit of the state legal expense fund at the end of an appropriation period shall not be transferred to general revenue.

9. Any rule or portion of a rule, as that term is defined in section 536.010, RSMo, that is promulgated under the authority delegated in sections 105.711 to 105.726 shall become effective only if it has been promulgated pursuant to the provisions of chapter 536, RSMo. Nothing in this section shall be interpreted to repeal or affect the validity of any rule filed or adopted prior to August 28, 1999, if it fully complied with the provisions of chapter 536, RSMo. This section and chapter 536, RSMo, are nonseverable and if any of the powers vested with the general assembly pursuant to chapter 536, RSMo, to review, to delay the effective date, or to disapprove and annul a rule are subsequently held unconstitutional, then the grant of rulemaking authority and any rule proposed or adopted after August 28, 1999, shall be invalid and void.