

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| **SHERRI L. SCHOLDBERG,** | ) | |
| | ) | |
| **Appellant,** | ) | **WD81874** |
| | ) | |
| **v.** | ) | **OPINION FILED:  June 4, 2019** |
| | ) | |
| **KURT SCHOLDBERG,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**Appeal from the Circuit Court of Clay County, Missouri**
The Honorable Janet L. Sutton, Judge

Before Division Two:  Thomas N. Chapman, Presiding Judge, Mark D. Pfeiffer, Judge
and Cindy L. Martin, Judge

Sherri L. Scholdberg ("Ms. Scholdberg") appeals the trial court's grant of summary judgment in favor of Kurt Scholdberg ("Mr. Scholdberg") in Ms. Scholdberg's premises liability lawsuit.  Ms. Scholdberg contends that Mr. Scholdberg's actual knowledge of the dangerous condition on his property which caused Ms. Scholdberg's fall remains a genuine issue of fact in dispute, preventing the entry of summary judgment as a matter of law. Because Ms. Scholdberg, a licensee on Mr. Scholdberg's property, produced no evidence from which a factfinder could infer that Mr. Scholdberg had actual knowledge of the

dangerous condition on his property that caused Ms. Scholdberg's fall, the trial court did not err in entering summary judgment in favor of Mr. Scholdberg. We affirm.

## Factual and Procedural Background

Mr. Scholdberg owns a home located in Gladstone, Missouri. Ms. Scholdberg[1] began living in Mr. Scholdberg's home in August 2014 because she had no car and needed to be able to walk to work. Ms. Scholdberg did not pay rent to Mr. Scholdberg.

On April 22, 2015, Ms. Scholdberg leaned against a railing on the front porch of Mr. Scholdberg's home (the "top railing"). The top railing broke away, causing Ms. Scholdberg to fall.

Ms. Scholdberg filed suit against Mr. Scholdberg alleging negligence on a premises liability theory. Mr. Scholdberg moved for summary judgment. Mr. Scholdberg alleged that Ms. Scholdberg was a licensee and could not establish that Mr. Scholdberg had actual knowledge that the top railing was in a dangerous condition, an essential element of Ms. Scholdberg's claim.

The statement of uncontroverted facts accompanying Mr. Scholdberg's motion for summary judgment alleged that Ms. Scholdberg noticed nothing unusual about the top railing before her fall, and that Mr. Scholdberg did not install the top railing that caused Ms. Scholdberg's fall. Ms. Scholdberg admitted these uncontroverted facts, and admitted that she was a licensee.

---

[1]Mr. Scholdberg and Ms. Scholdberg used to be married. Mr. Scholdberg invited Ms. Scholdberg to live in his home while she was saving money to buy a car because she is the mother of his children. Mr. Scholdberg and Ms. Scholdberg did not resume, however, a romantic relationship.

The statement of uncontroverted facts also alleged that Mr. Scholdberg did not know that the top railing was in a deteriorated condition; that at no point before Ms. Scholdberg's fall had Mr. Scholdberg installed, repaired, replaced, or modified the top railing; and that no one ever told Mr. Scholdberg that something was wrong with the top railing. These uncontroverted facts were supported by Mr. Scholdberg's affidavit, and by references to the transcript of Mr. Scholdberg's deposition.

Ms. Scholdberg denied these uncontroverted facts. She alleged in response that a second railing of similar construction had once existed on stairs from the front porch down to the driveway (the "bottom railing"). The bottom railing had fallen over at some point, and Mr. Scholdberg asked Sean Scholdberg ("Sean")[2] to remove the bottom railing. When Sean did so, he discovered that the brackets connecting the bottom railing to the stairs were rusted. Sean testified in his deposition that the rust on the brackets was not visible before the bottom railing fell because the brackets were covered by a decorative sleeve that had to be pried up to observe the brackets. Sean testified in his deposition that although "the family" generally discussed making sure the top railing was safe for the grandkids, he never inspected the brackets on the top railing, and he does not know if Mr. Scholdberg ever inspected the top railing. Sean testified in his deposition that it was only after Ms. Scholdberg fell that it was determined that the top railing had rusted brackets. Ms. Scholdberg argued that these facts created a genuine issue of material fact in dispute about

---

[2]Sean is the adult son of Mr. Scholdberg and Ms. Scholdberg. We refer to him by his first name to avoid confusion. No disrespect is intended.

3

whether Mr. Scholdberg had actual knowledge that the top railing was in a dangerous condition.

The trial court entered its judgment on May 16, 2018, granting Mr. Scholdberg's motion for summary judgment ("Judgment"). The trial court found that Ms. Scholdberg admitted she was a licensee on Mr. Scholdberg's property, and that as such, Mr. Scholdberg owed Ms. Scholdberg "the duty to make safe only those dangers of which he had knowledge." [L.F. Doc 24, p. 1] The trial court found that:

> After an extended period of discovery, plaintiff has not produced any evidence that [Mr. Scholdberg] knew of the condition of the [top railing] prior to [Ms. Scholdberg's] fall. Therefore [Ms. Scholdberg] cannot prove a necessary element of her claim and summary judgment in [Mr. Scholdberg's] favor is appropriate and [Mr. Scholdberg's] motion for summary judgment should be granted.

[L.F. Doc. 24, p. 1]

Ms. Scholdberg filed this timely appeal.

**Analysis**

Ms. Scholdberg raises a single point on appeal. She argues that whether Mr. Scholdberg had actual knowledge that the top railing was in a dangerous condition was a genuine issue of material fact in dispute, precluding the entry of summary judgment on her claim of premises liability as a matter of law.

Appellate review of a trial court's grant of summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "We review the record in the light most favorable to the party against whom the judgment was entered." *Love v. Waring*, 560 S.W.3d 614, 618 (Mo. App. W.D. 2018).

4

"However, we take as true the facts set forth in support of the summary judgment motion unless contradicted by the non-movant's response." *Id.* (citing *ITT*, 854 S.W.2d at 376). "Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Id.*

> Where, as in this case, the movant is the defendant, the movant establishes the right to judgment as a matter of law by showing one of the following:
>
> "(1) facts negating any one of the claimant's elements necessary for judgment; (2) that the claimant, after an adequate period of discovery, has not been able to--and will not be able to--produce evidence sufficient to allow the trier of fact to find the existence of one of the claimant's elements; or (3) facts necessary to support his properly pleaded affirmative defense."

*Id.* at 618-19 (quoting *Roberts v. BJC Health Sys.*, 391 S.W.3d 433, 437 (Mo. banc 2013)).

Here, the trial court granted summary judgment because it concluded that despite extensive discovery, Ms. Scholdberg had not produced evidence from which a trier of fact could find the existence of an essential element of her claim--that Mr. Scholdberg had actual knowledge of the dangerous condition of the top railing. Ms. Scholdberg concedes that because she was a licensee on Mr. Scholdberg's property, she was required to prove that Mr. Scholdberg had actual knowledge of the dangerous condition of the top railing. Ms. Scholdberg concedes that the dangerous condition that caused her fall was the rusty brackets on the top railing. Ms. Scholdberg concedes that there is no evidence that Mr. Scholdberg (or anyone else for that matter, including herself) had actual knowledge that there were rusty brackets on the top railing before she fell.

Ms. Scholdberg claims, however, that because Mr. Scholdberg knew the bottom railing had rusty brackets, and because the bottom railing and top railing were of similar

5

construction, and because Sean suggested that the top railing should be inspected, a fact finder could infer that Mr. Scholdberg had actual knowledge that the top railing was in a dangerous condition. In effect, Ms. Scholdberg argues that because Mr. Scholdberg was on notice that the bottom railing had rusty brackets, a fact finder could infer that Mr. Scholdberg had actual knowledge that the top railing had rusty brackets. We disagree. Ms. Scholdberg's argument presumes a duty of care that is not owed by a possessor of land to a licensee.

In a premises liability case, "'the particular standard of care that society recognizes as applicable under a given set of facts is a question of law for the courts.'" *Carter v. Kinney*, 896 S.W.2d 926, 928 (Mo. banc 1995) (quoting *Harris v. Niehaus*, 857 S.W.2d 222, 225 (Mo. banc 1993)). "The duty owed to a plaintiff in a premises liability action generally depends upon his status at the time of the injury." *Ryan v. Rademacher*, 142 S.W.3d 846, 849 (Mo. App. E.D. 2004) (citing *Cook v. Smith*, 33 S.W.3d 548, 552 (Mo. App. W.D. 2000)). "All persons who enter a premises with permission are licensees until the possessor has an interest in the visit such that the visitor 'has reason to believe that the premises have been made safe to receive him.'" *Carter*, 896 S.W.2d at 928 (quoting 65 C.J.S. *Negligence* section 63(41), 719). "That makes the visitor an invitee." *Id.* "[W]hen the facts surrounding the status of a visitor are not in dispute, the determination of whether the visitor is an invitee or a licensee is a question of law." *Anderson v. Accurso*, 899 S.W.2d 938, 941 (Mo. App. W.D. 1995) (citing *Carter*, 896 S.W.2d at 927-28).

The distinction between licensees and invitees is of critical import in Missouri, as the distinction controls the duty of care owed by the possessor of land. "[T]he possessor

6

owes a licensee the duty to make safe dangers of which the possessor is aware . . . ." *Carter*, 896 S.W.2d at 928 (citing *Wells v. Goforth*, 443 S.W.2d 155, 158 (Mo. banc 1969), *overruled on other grounds by Rowe v. Farmers Ins. Co.*, 699 S.W.2d 423 (Mo. banc 1985)). In contrast, the duties owed by a possessor to an invitee are broader. "[T]he possessor owes invitees the duty to exercise reasonable care to protect them against both known dangers and those that would be revealed by inspection." *Id.* (citing *Harris*, 857 S.W.2d at 225-26).

In Missouri, the duty owed by the possessor of lands to a licensee is drawn from 2 Restatement of Torts section 342 (Am. Law. Inst. 1934). *Wells*, 443 S.W.2d at 158. Section 342 of the first Restatement of Torts provides:

> A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon *if, but only if, he*
>
> > (a)  *knows of the condition* and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and
> >
> > (b)  invites or permits them to enter or remain upon the land, without exercising reasonable care
> >
> > > (i)  to make the condition reasonably safe, or
> > >
> > > (ii)  to warn them of the condition and the risk involved therein

In *Wells*, our Supreme Court expressly declined to adopt and follow the Restatement (Second) of Torts section 342 (Am. Law. Inst. 1965), insofar as it modified the standard of care owed by a possessor of lands to a licensee. 443 S.W.2d 157-59. After setting forth section 342 of the first Restatement of Torts, *Wells* comparatively set forth section 342 of the second Restatement of Torts:

7

"A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,

(a) the possessor *knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm* to such licensees, and should expect that they will not discover or realize the danger, and

(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and

(c) the licensees do not know or have reason to know of the condition and the risk involved."

*Wells,* 443 S.W.2d at 158 (emphasis added). *Wells* rejected the invitation to adopt the change to section 342 of the second Restatement. *Id.* The Court's rationale is important to our analysis in this case:

Section 342 of the second Restatement represents a change from the first Restatement by condensing it slightly, by adding the addition of Clause (c), and by the addition of the words "or has reason to know." The words "reason to know" are used "to denote the fact that the actor has information from which a person of reasonable intelligence or of the superior intelligence of the actor would infer that the fact in question exists, or that such person would govern his conduct upon the assumption that such fact exists." 1 Restatement, Law of Torts, Second, [section] 12 (1965). This change of language "was made to emphasize the objectivity of the test of actual knowledge." 65 C.J.S. Negligence [section] 63(35), p. 707.

We decline to adopt the rule stated in 2 Restatement, Law of Torts, Second, [section] 342 (1965). We adopt the rule stated in 2 Restatement, Law of Torts, First, [section] 342 (1934). We do not believe a possessor of land should be subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon unless the possessor is himself aware of the condition.

*Id.* at 159.

Missouri's adherence to the first Restatement's discussion of the duty of care owed by a possessor of land to a licensee has been reiterated on multiple occasions since *Wells*. In *Carter*, our Supreme Court expressly declined the invitation to abolish the distinction

8

between licensees and invitees. 896 S.W.2d at 929-30. *Carter* acknowledged that "the current system recognizes a lower standard of care for licensees than invitees," and rejected the argument that the distinction is arbitrary. *Id.* at 929.

> We are not persuaded that the licensee/invitee distinction no longer serves. The possessor's intentions in issuing the invitation determine not only the status of the entrant but the possessor's duty of care to that entrant. The contours of the legal relationship that results from the possessor's invitation reflect a careful and patient effort by courts over time to balance the interests of persons injured by conditions of land against the interests of possessors of land to enjoy and employ their land for the purposes they wish. . . . [T]he maintenance of the distinction between licensee and invitee creates fairly predictable rules within which entrants and possessors can determine appropriate conduct and juries can assess liability. To abandon the careful work of generations for an amorphous "reasonable care under the circumstances" standard seems--to put it kindly--improvident.

*Id.* at 930. Subsequent to *Carter*, our courts have consistently recognized Missouri's adherence to the duty of care owed licensees as described in section 342 of the first Restatement of Torts, and to differentiating between the duties of care owed to licensees and invitees. *See, e.g., Woodall v. Christian Hosp. NE-NW*, 473 S.W.3d 649, 653 (Mo. App. E.D. 2015); *Ryan v. Rademacher*, 142 S.W.3d 846, 849 (Mo. App. E.D. 2004) (noting that possessor of land is subject to liability to a licensee for a dangerous condition on the land "if, but only if, he . . . knows of the condition and realizes that it involves an unreasonable risk to the licensee . . .") (citing 2 RESTATEMENT OF TORTS section 342); *Cook*, 33 S.W.3d at 552-53 ("Missouri follows the Restatement, Law of Torts, First [section] 342 (1934)" in determining the duty owed by the possessor of land to a licensee); *Hutto By and Through Hutto v. Rogers*, 920 S.W.2d 112, 114 n.1 (Mo. App. E.D. 1996); *Anderson*, 899 S.W.2d at 941 (holding that "a possessor or owner of land owes a licensee

9

the duty to make safe dangers of which the possessor or owner is aware"); 18A MISSOURI PRACTICE *Real Estate Law* section 75:4 (3d ed. 2006).[3]

It is against this settled law that the trial court's grant of summary judgment must be gauged. Ms. Scholdberg concedes that she was a licensee on Mr. Scholdberg's property. Thus, Ms. Scholdberg was required to prove that Mr. Scholdberg had actual knowledge of the rusty brackets on the top railing. The evidence Ms. Scholdberg relies on to urge that Mr. Scholdberg had actual knowledge of the rusty brackets on the top railing does not establish that fact. Instead, the facts Ms. Scholdberg relies on would permit a fact finder to infer that Mr. Scholdberg objectively could or should have known about the rusty brackets on the top railing. That, however, is not the standard of care Mr. Scholdberg owed to Ms. Scholdberg. To conclude as Ms. Scholdberg argues would expand the duty a possessor owes a licensee in Missouri to include the duty to inspect to find dangerous conditions about which the possessor has reason to know, in direct contravention of *Wells*. 443 S.W.2d at 158; *see also* 2 RESTATEMENT OF TORTS section 342 cmt. c ("A possessor of land *owes* to a gratuitous licensee *no duty* to prepare a safe place for the licensee's reception or *to inspect* the land *to discover possible or even probable dangers*.") (emphasis added). And to conclude as Ms. Scholdberg argues would abolish the distinction between

---

[3]Missouri's adherence to section 342 of the first Restatement stands in contrast to its express adoption of the second Restatement of Torts in *Harris v. Niehaus*, 857 S.W.2d 222, 225-26 (Mo. banc 1993), with respect to the standard of care owed to invitees (sections 343 and 343(A)), and with respect to the definitions of "licensee," (section 330) and "invitee," (section 332). However, *Harris* "assumed the continued existence of the licensee-invitee distinction." *Carter*, 896 S.W.2d at 927 n.1. Thus, broad statements suggesting that "Missouri Courts have adopted the Restatement (Second) of Torts (1965) with regard to premises liability," *Medley v. Joyce Meyer Ministries, Inc.*, 460 S.W.3d 490, 495 (Mo. App. E.D. 2015), must be tempered by the discrete exception for the standard of care owed to licensees as described in section 342 of the first Restatement of Torts.

the narrow duty of care owed to licensees in Missouri and the broader duty of care owed to invitees, in direct contravention of *Carter*. 896 S.W.2d at 930.

We faced nearly identical circumstances in *Anderson*, where we affirmed the grant of summary judgment in favor of the possessor of land on the basis that a licensee failed to "set[] forth specific facts showing that there was a genuine issue of material fact concerning [the possessor's] knowledge of the condition of the [a] deck," after the possessor "presented facts which contradicted the allegation that she had knowledge of the defective condition of the deck." 899 S.W.2d at 942. The same is true in this case. Though Ms. Scholdberg purported to controvert Mr. Scholdberg's statement that he did not have actual knowledge of the rusty brackets on the top railing, she did not support her denial with facts that would permit the conclusion that Mr. Scholdberg had actual knowledge of the rusty brackets on the top railing. And though we assume as true for purposes of our review that Sean suggested the top railing should be inspected, that fact does not controvert Mr. Scholdberg's contention that he did not have actual knowledge of the rusty brackets on the top railing, as Mr. Scholdberg had no duty to inspect the top railing under Missouri law, notwithstanding "probable" danger.[4] 2 RESTATEMENT OF TORTS section 342 cmt. c ("A possessor of land owes to a gratuitous licensee no duty . . . to inspect . . . to discover possible or even probable dangers.").

---

[4]Sean testified that he did not know the top railing had rusty brackets before Ms. Scholdberg fell. It follows that Sean's suggestion that the top railing should be checked could not impart actual knowledge to Mr. Scholdberg that Sean did not possess. We therefore reject Ms. Scholdberg's argument that in entering summary judgment, the trial court improperly resolved a contested credibility issue. It did not. It is irrelevant whether Sean suggested that Mr. Scholdberg inspect the top railing as in the case of a licensee, that fact cannot controvert, as a matter of law, Mr. Scholdberg's factual contention that he did not have actual knowledge of the rusty brackets on the top railing.

It was therefore proper for the trial court to grant summary judgment in favor of Mr. Scholdberg. The evidence Ms. Scholdberg relied on to controvert Mr. Scholdberg's contention that he did not have actual knowledge of the rusty brackets on the top railing could not, as a matter of law, have supported a finding of actual knowledge about the rusty brackets on the top railing without ignoring the duty of care Mr. Scholdberg owed to Ms. Scholdberg as a licensee. This result is indistinguishable from the result reached in *Wells* where our Supreme Court affirmed the entry of judgment in favor of a possessor:

> [P]laintiff . . . cannot recover under the rule announced in this opinion because there is no evidence from which it may be found, without resorting to guesswork, conjecture or speculation, that defendants *knew* of the icy condition of the porch before the fall. Plaintiff argues, in effect, that defendants "should have known" of the icy condition of the porch under the existing facts and circumstances. To accept plaintiff's argument would be to place upon defendants a duty owed [invitees].

443 S.W.2d at 159 (emphasis added).

Undeterred, Ms. Scholdberg argues that actual knowledge can be inferred from circumstantial evidence. That is true. *Wells* held "that a possessor's 'knowledge' may be proved by circumstantial evidence." *Id.* at 158. However, *Wells* cautioned that "'the circumstances must be such that the necessary fact may be inferred therefrom and must reasonably follow, so that the conclusion so reached is not the result of guesswork, conjecture or speculation.'" *Id.* (quoting *Herrman v. Daffin*, 302 S.W.2d 313, 316 (Mo. App. 1957)). The circumstances Ms. Scholdberg relies on do not satisfy this standard. Actual knowledge of rusty brackets on the top railing does not necessarily follow from knowledge that the bottom railing had rusty brackets, or from Sean's suggestion to inspect the top railing. Instead, inferring that Mr. Scholdberg had actual knowledge of rusty

12

brackets on the top railing from the circumstances identified by Ms. Scholdberg requires guesswork, conjecture, and speculation. Moreover, inferring that Mr. Scholdberg had actual knowledge of rusty brackets on the top railing from the circumstances identified by Ms. Scholdberg presumes (mistakenly) that actual knowledge equates with what a possessor reasonably should know, and that a possessor owes licensees a duty to inspect. *See Wells,* 443 S.W.2d at 159 (rejecting an objective test of actual knowledge based on what a possessor has reason to know); 2 RESTATEMENT OF TORTS section 342 cmt. c ("A possessor of land owes to a gratuitous licensee no duty . . . to inspect . . . to discover possible or even probable dangers.").

Ms. Scholdberg persists, and argues that the facts in her case are like those in *Ryan*, where the Eastern District reversed the entry of summary judgment in favor of a possessor in a licensee's premises liability case. 142 S.W.3d at 850-51. In *Ryan*, the possessor of property admitted that she knew anhydrous ammonia was being stored in a garage. *Id.* at 850. She challenged, however, whether there was evidence that "she knew the anhydrous ammonia was being stored in a manner that would make it unreasonably dangerous." *Id.* at 850-51.

*Ryan* is not applicable to this case as it addresses a different essential element than is at issue in Ms. Scholdberg's case. Section 342(a) of the first Restatement of Torts requires the possessor of land to have actual knowledge of *two* different things: the condition *and* that the condition involves an unreasonable risk to a licensee.[5] In *Ryan* the

---

[5]In addition, section 342(a) of the first Restatement of Torts requires proof that the possessor has "reason to believe" that the licensee will not discover the condition or realize the risk.

possessor admitted actual knowledge of the condition--the presence of anhydrous ammonia--but disputed whether she had actual knowledge the condition posed an unreasonable risk to a licensee. In Ms. Scholdberg's case, the issue is whether Mr. Scholdberg had actual knowledge of the condition--the rusty brackets on the top railing. That alone renders *Ryan* inapposite.

Moreover, in *Ryan*, the fact that the possessor had actual knowledge that anhydrous ammonia posed an unreasonable risk necessarily followed without guesswork, conjecture, or speculation from the circumstances. *See Wells*, 443 S.W.2d at 159. The facts alleged by the non-movant suggested that the possessor "knew that the anhydrous ammonia was not being used for farming, but for the manufacture of methamphetamine," and had been told by her husband "that he was attempting to manufacture methamphetamine in the outbuilding with the use of anhydrous ammonia and not to allow their daughter to go near the outbuilding." *Ryan*, 142 S.W.3d at 851. Given these facts, the Eastern District concluded that "[t]his evidence creates a dispute as to whether [the possessor] knew that the anhydrous ammonia located in the outbuilding involved an unreasonable risk." *Id.* In stark contrast, the facts on which Ms. Scholdberg relies would not permit a fact finder to conclude, without speculation or conjecture, that Mr. Scholdberg had actual knowledge of the rusty brackets on the top railing.

Finally, Ms. Scholdberg argued below that to allow Mr. Scholdberg "to escape potential liability by ignoring the concerns [brought to his attention] flies in the face of Missouri public policy of protecting occupiers of land." [L.F. Doc 22, p. 3] Ms. Scholdberg's public policy argument is the antithesis of our Supreme Court's holdings in

14

*Wells*, 443 S.W.2d at 159 ("[w]e do not believe a possessor of land should be subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon unless the possessor is himself aware of the condition"), and in *Carter*, 896 S.W.2d at 930 ("To abandon the careful work of generations for an amorphous 'reasonable care under the circumstances' standard seems--to put it kindly--improvident.").

Though Ms. Scholdberg's evidence would likely have permitted her to survive summary judgment had Missouri adopted section 342 of the second Restatement of Torts, or had Ms. Scholdberg qualified as an invitee, neither scenario is applicable here. The trial court did not err in entering summary judgment in favor of Mr. Scholdberg.

Point denied.

## Conclusion

The trial court's Judgment is affirmed.

_____
Cynthia L. Martin, Judge

All concur

15