In the
 Missouri Court of Appeals
 Western District
TRAVIS POKE, )
 )
 Appellant, ) WD84198
 )
v. ) OPINION FILED: September 7, 2021
 )
INDEPENDENCE SCHOOL )
DISTRICT, )
 )
 Respondent. )

 Appeal from the Circuit Court of Jackson County, Missouri
 The Honorable Jennifer M. Phillips, Judge

 Before Division Four: Cynthia L. Martin, Chief Judge, Presiding, Gary D. Witt, Judge
 and Roy L. Richter, Special Judge

 Travis Poke ("Poke") appeals from the trial court's entry of summary judgment in

favor of the Independence School District ("School District") on Poke's claim of

retaliatory discharge pursuant to section 287.7801 following Poke's exercise of rights

under the Workers' Compensation Law.2 Poke asserts that the trial court committed legal

error when it concluded that the School District enjoys sovereign immunity from section

 1
 All statutory references are to RSMo 2016, as supplemented through the date the School District
terminated Poke's employment, unless otherwise indicated.
 2
 Chapter 287.
287.780 claims of retaliatory discharge. Because the General Assembly expressly

waived sovereign immunity for section 287.780 claims of retaliatory discharge, and

because the exception to waiver of sovereign immunity described in section 105.850 does

not apply to the School District, Poke's claim against the School District for retaliatory

discharge is not barred by sovereign immunity. We reverse and remand.

 Factual and Procedural Background3

 Poke was employed by the School District as a custodian. On December 18, 2019,

Poke injured his lower abdomen and groin while attempting to fold a cafeteria table.

Poke worked through his pain for the next three days until a scheduled holiday break.

When Poke returned to work on January 2, 2020, his pain had decreased, although he had

a knot in his lower abdomen and groin. Over the next two weeks, Poke experienced

intermittent pain that increased with activities.

 On January 14, 2020, Poke lifted a full trash barrel liner at work, and then

experienced intense pain and nausea, and had difficulty standing. Poke informed his

supervisor that he needed to seek medical attention. A medical provider informed Poke

that he may have suffered a hernia. Poke realized he sustained the hernia while

attempting to fold the cafeteria table on December 18, 2019.

 Poke initiated a workers' compensation claim with the School District on January

15, 2020. He was directed to the School District's authorized treatment provider, who

diagnosed Poke with inguinal tenderness and directed Poke not to lift objects greater than

 3
 When reviewing the entry of summary judgment, "[w]e view the record in the light most favorable to the
party against whom the judgment was entered and accord the non-movant all reasonable inferences from the
record." Traweek v. Smith, 607 S.W.3d 779, 784 (Mo. App. W.D. 2020).

 2
ten pounds, not to engage in strenuous pulling or pushing, and not to bend or squat. Poke

provided the School District's authorized treatment provider with a urine sample. Poke

returned to work on January 16, 2020.

 On January 27, 2020, the School District discharged Poke and provided him with a

termination letter. The letter advised that Poke had been terminated for violating the

School District's policy that "any District employees under the influence of drugs or

controlled substances while on duty are subject to disciplinary action, up to and including

termination." According to the termination letter, Poke's urine sample tested positive for

marijuana. The School District relied on the positive drug test to deny Poke's workers'

compensation claim.

 On February 28, 2020, Poke filed a petition ("Petition") against the School District

that alleged the stated basis for his termination was pretextual, and that he was actually

terminated in retaliation for exercising his rights under the Workers' Compensation Law.

Poke's Petition asserted that "[t]he actions of [the School District], including [Poke's]

discharge from employment and denial of [Poke's] previously accepted workers'

compensation claim, were acts of retaliation, in violation of [section] 287.780."

 The School District filed an answer ("Answer") to the Petition and denied that

Poke was discharged in retaliation for filing a workers' compensation claim. The Answer

also asserted that "[Poke's] claim[ is] barred by the doctrines of governmental, sovereign,

and/or Eleventh Amendment immunity."

 The School District filed a motion for summary judgment ("Motion for Summary

Judgment") on July 29, 2020. The School District's statement of uncontroverted facts

 3
alleged: (1) that "[Poke's] claims are based upon events occurring between December

2019 and January 2020"; (2) that "[t]he [School] District maintained a single liability

insurance policy . . . potentially providing coverage in this case"; and (3) that the liability

insurance policy contains a provision that preserves the School District's sovereign

immunity as provided by law. The Motion for Summary Judgment argued that settled

decisional law establishes that public entities like the School District are entitled to

sovereign immunity from section 287.780 retaliatory discharge claims.4 The Motion for

Summary Judgment thus argued that even though the School District had acquired

liability insurance,5 the policy's exclusion of coverage to the extent of the School

District's sovereign immunity was controlling, and required the entry of judgment in

favor of the School District as a matter of law.

 Poke's suggestions in opposition to the Motion for Summary Judgment admitted

each of the School District's uncontroverted facts. Poke argued, however, that the

uncontroverted facts did not entitle the School District to judgment as a matter of law.

Poke argued that the General Assembly expressly waived sovereign immunity for section

287.780 retaliatory discharge claims by including governmental bodies within the

definition of "employer" applicable to Chapter 287. Poke further argued that Missouri

 4
 Although the School District asserted sovereign immunity as an affirmative defense in its Answer,
sovereign immunity is not an affirmative defense but is instead a part of the plaintiff's prima facie case, such that
Poke had an obligation to plead specific facts in his Petition supporting a waiver of, or an exception to, sovereign
immunity. State ex rel. City of Kansas City v. Harrell, 575 S.W.3d 489, 492 (Mo. App. W.D. 2019). The School
District did not file a motion to dismiss Poke's Petition for failure to state a claim, and its Motion for Summary
Judgment did not argue that Poke failed to plead a waiver of, or an exception to, sovereign immunity.
 5
 A public entity's purchase of liability insurance generally waives sovereign immunity to the extent of the
coverage provided by the policy. See section 537.610.1.

 4
cases holding that sovereign immunity is not waived by section 287.780 rely on section

105.850 to reach that conclusion, and have been wrongly decided.

 The trial court issued a judgment and order granting the School District's Motion

for Summary Judgment ("Judgment") on November 12, 2020. The Judgment concluded

that, pursuant to Krasney v. Curators of University of Missouri, 765 S.W.2d 646, 648

(Mo. App. W.D. 1989), and King v. Probate Division, Circuit Court of County of St.

Louis, 21st Judicial Circuit, 958 S.W.2d 92, 93 (Mo. App. E.D. 1997), the School

District enjoyed sovereign immunity with respect to Poke's section 287.780 claim for

retaliatory discharge. The Judgment further found that the School District's purchase of a

liability insurance policy did not waive sovereign immunity, as the policy provided that

coverage would not extend to claims that would have been barred by sovereign immunity

but for the existence of the policy.

 Poke appeals.

 Standard of Review

 "We review the grant of summary judgment de novo." Estes as Next Friend for

Doe v. Bd. of Trs. of Mo. Pub. Entity Risk Mgmt. Fund, 623 S.W.3d 678, 686 (Mo. App.

W.D. 2021) (quoting In re Annaliese Brightwell Tr., 605 S.W.3d 143, 145 (Mo. App.

W.D. 2020)). Summary judgment is appropriate if there is no genuine issue as to any

material fact, and where the uncontroverted facts entitle the moving party to judgment as

a matter of law. Id. Where, as here, the movant is the defendant, summary judgment is

appropriate when the movant establishes one of the following:

 5
 (1) facts negating any one of the claimant's elements necessary for
 judgment; (2) that the claimant, after an adequate period of discovery, has
 not been able to--and will not be able to--produce evidence sufficient to
 allow the trier of fact to find the existence of one of the claimant's elements;
 or (3) facts necessary to support his properly pleaded affirmative defense.

Scholdberg v. Scholdberg, 578 S.W.3d 831, 834-35 (Mo. App. W.D. 2019) (quoting Love

v. Waring, 560 S.W.3d 614, 618-19 (Mo. App. W.D. 2018)).

 In determining whether the trial court's entry of summary judgment was

appropriate, we treat the School District's statement of uncontroverted facts as true unless

properly controverted by Poke. Id. at 834. Poke admitted each of the School District's

uncontroverted facts. Thus, we must determine whether the uncontroverted facts

supported the entry of judgment in favor of the School District as a matter of law. ITT

Commercial Finance Corp. v. Mid-America Marine Supply Corp., 854 S.W.2d 371, 380

(Mo. banc 1993) ("The key to summary judgment is the undisputed right to judgment as a

matter of law; not simply the absence of a fact question.").

 Analysis

 Poke asserts in a single point on appeal that the trial court erred as a matter of law

when it entered summary judgment in favor of the School District on the basis of

sovereign immunity. Poke claims that the General Assembly's inclusion of the state and

its political subdivisions in the definition of "employer" for purposes of Chapter 287

constituted an express waiver of sovereign immunity for section 287.780 retaliatory

discharge claims asserted against an employer. Poke argues that Missouri cases holding

 6
to the contrary in reliance on section 105.850, an antiquated statute, were wrongly

decided, and should be disregarded.6

 The School District concedes that it falls within the definition of "employer" for

purposes of Chapter 287, but argues that section 105.850 has been repeatedly construed

to retain the protection of sovereign immunity for section 287.780 claims of retaliatory

discharge. The School District thus argues that settled precedent requires us to affirm the

trial court's Judgment.

 The trial court's Judgment expressly relied on the holdings in Krasney and King to

conclude that the School District enjoys sovereign immunity from section 287.780

retaliatory discharge claims. Krasney and King both hold that, to the extent applicable,

section 105.850 preserves sovereign immunity for tort claims arising under the Workers'

Compensation Law, including claims pursuant to section 287.780. Relying on Krasney

and King, the trial court reached the same conclusion, though the Judgment does not

expressly refer to section 105.850. We must determine whether the trial court's legal

conclusion was correct, notwithstanding the absence of uncontroverted facts. ITT Com.

Fin. Corp, 854 S.W.2d at 380.

Section 105.850 does not apply to the School District and does not operate to preserve
the School District's sovereign immunity from section 287.780 retaliatory discharge
claims

 6
 Poke does not challenge the Judgment's conclusion that the School District's purchase of liability insurance
did not waive sovereign immunity for section 287.780 retaliatory discharge claims. However, because that
conclusion is inherently dependent upon the trial court's conclusion that the School District enjoys sovereign
immunity from section 287.780 retaliatory discharge claims, Poke's failure to challenge the Judgment's conclusion
regarding the effect of acquiring liability insurance is not fatal to Poke's appeal. Cf. STRCUE, Inc. v. Potts, 386
S.W.3d 214, 219 (Mo. App. W.D. 2012) (holding that an appellant's failure to challenge each ruling that could
support affirming a trial court's judgment is fatal to appeal).

 7
 Section 537.600 addresses sovereign immunity, and provides, in relevant part:

 Such sovereign or governmental tort immunity as existed at common law in
 this state prior to September 12, 1977,7 except to the extent waived,
 abrogated or modified by statutes in effect prior to that date, shall remain in
 full force and effect; except that, the immunity of the public entity from
 liability and suit for compensatory damages for negligent acts or omissions
 is hereby expressly waived in the following instances: (1) [injuries arising
 out of the negligent operation of a motor vehicle by a public employee
 within the course of his or her employment]; [and] (2) [injuries caused by
 the dangerous condition of a public entity's property].

Section 537.600.1. "Unless [sovereign immunity] is waived or a statutory or recognized

common law exception . . . is applicable, sovereign immunity applies" to protect a public

entity from suit for liability in tort. Metro. St. Louis Sewer Dist. v. City of Bellefontaine

Neighbors, 476 S.W.3d 913, 914 (Mo. banc 2016); see also Wyman v. Mo. Dep't of

Mental Health, 376 S.W.3d 16, 19 (Mo. App. W.D. 2012) ("[A] public entity with the

status of a governmental body . . . is immune from suit for liability in tort in the absence

of an express statutory provision. Liability of a political subdivision for torts is the

exception to the general rule of sovereign immunity . . . ." (quoting Langley v. Curators

of Univ. of Mo., 73 S.W.3d 808, 811 (Mo. App. W.D. 2002))). It is settled law that

school districts are public entities that enjoy sovereign immunity except where waived.

See, e.g., Doe as Next Friend of Doe Minor v. Garagnani, 614 S.W.3d 556, 559 (Mo.

App. S.D. 2020).

 The decision to waive sovereign immunity, and the extent to which immunity is

waived, is within the General Assembly's purview. Murray v. Mo. Highway & Transp.

 7
 September 12, 1977, is the date that the Supreme Court of Missouri abolished sovereign immunity in
Jones v. State Highway Commission, 557 S.W.2d 225 (Mo. banc 1977). Estes as Next Friend for Doe, 623 S.W.3d
at 689. The General Assembly restored sovereign immunity by enacting sections 537.600 through 537.650. Id.

 8
Comm'n, 37 S.W.3d 228, 235 (Mo. banc 2001). Thus, through the enactment of a statute,

the General Assembly may waive sovereign immunity as it sees fit. Id.

 Chapter 287 addresses the duties and obligations of employers with respect to

workers' compensation claims. Section 287.030.1 defines the word "employer" for

purposes of Chapter 287 "to mean: . . . (2) The state, county, municipal corporation,

township, school or road, drainage, swamp and levee districts, or school boards, board of

education, regents, curators, managers or control commission, board or any other political

subdivision, corporation or quasi-corporation, or cities under special charter, or under the

commission form of government." Before 1974, the definition of "employer" in section

287.030.1(2) included a similar list of governmental bodies, but provided that identified

governmental bodies were not bound by the provisions of Chapter 287 unless the entity

"elects to accept [Chapter 287] by law or ordinance." See, e.g., section 287.030.1(2),

RSMo 1969.

 In 1969, at a time when submission to the Workers' Compensation Law remained

subject to a governmental body's election "by law or ordinance," the General Assembly

enacted sections 105.800 through 105.850 to make the provisions of Chapter 287

applicable to all "state employees." See sections 105.810 & 105.800 RSMo 1969. "State

employee" was defined as follows:

 As used in sections 105.800 to 105.850, the term "state employee" means
 any person who is an elected or appointed official of the state of Missouri
 or who is employed by the state and earns a salary or wage in a position
 normally requiring the actual performance by him of duties on behalf of
 the state.

 9
Section 105.800, RSMo 1969 (emphasis added). Of particular relevance to this case,

section 105.850 provides:

 Nothing in sections 105.800 to 105.850 shall ever be construed as
 acknowledging or creating any liability in tort or as incurring other
 obligations or duties except only the duty and obligation of complying with
 the provisions of chapter 287.
 In 1974, section 287.030.1(2) was amended to delete the provision which made

acceptance of Chapter 287 elective for governmental bodies listed in the definition of

"employer." Section 287.030.1(2), RSMo Supp. 1975. After this amendment, all

governmental bodies identified in section 287.030.1(2) were "employers" bound to

provide workers' compensation coverage pursuant to the provisions of Chapter 287. Id.

The practical effect of the 1974 amendment to section 287.030.1(2) was to eliminate the

need for sections 105.800 through 105.850, at least insofar as those sections extended the

mandate of workers' compensation coverage to "state employees." However, sections

105.800 through 105.850 have never been repealed.

 Section 287.780 provides:

 No employer or agent shall discharge or discriminate against any employee
 for exercising any of his or her rights under this chapter when the
 exercising of such rights is the motivating factor in the discharge or
 discrimination. Any employee who has been discharged or discriminated
 against in such manner shall have a civil action for damages against his
 or her employer. For purposes of this section, "motivating factor" shall
 mean that the employee's exercise of his or her rights under this chapter
 actually played a role in the discharge or discrimination and had a
 determinative influence on the discharge or discrimination.

(Emphasis added.) Before 1973, section 287.780 provided that an employer's discharge

of, or discrimination against, an employee for exercising rights under Chapter 287

 10
constituted a criminal misdemeanor. See section 287.780 RSMo 1969. In 1973 section

287.780 was amended to convert an employer's discharge of, or discrimination against,

an employee for exercising rights under Chapter 287 from a criminal misdemeanor to a

private right of action for damages. Section 287.780 RSMo Cum. Supp. 1973. The

effect of this amendment was to "create[] a judicially cognizable independent tort" for

retaliatory discharge. Cook v. Hussmann Corp., 852 S.W.2d 342, 344 (Mo. banc 1993).

The 1973 amendment to section 287.780 occurred one year before the General Assembly

amended section 287.030.1(2) in 1974 to delete the language which made submission to

the Workers' Compensation Law elective for governmental bodies.

 The plain language of section 287.780 prohibits all "employers" from engaging in

retaliatory conduct, and creates a civil action for damages against all "employers" who

ignore this prohibition. Poke argues that section 287.780's application to all employers,

and section 287.030.1(2)'s definition of "employer," combine to reflect the General

Assembly's express waiver of sovereign immunity for claims of retaliatory discharge.

Poke further argues that the sequencing of the enactment of sections 105.800 through

105.850 in 1969, and of the amendments to section 287.780 and section 287.030.1(2) in

1973 and 1974, signal the General Assembly's intent to disregard section 105.850's

retention of sovereign immunity for tort claims arising pursuant to the Workers'

Compensation Law, notwithstanding that section 105.850 has never been repealed.

 The School District does not contest that it is an "employer" as defined by section

287.030.1(2), and that it is bound to act in accordance with the duties and obligations

imposed by the provisions of Chapter 287. However, the School District contends that it

 11
is nonetheless immune from civil liability for the "independent tort" of retaliatory

discharge created by section 287.780 because that section must be read with section

105.850, which states that sections 105.800 to 105.850 are never to be construed as

acknowledging or creating any liability in tort under Chapter 287. The School District

notes that four Missouri cases have so held, and thus argues that section 105.850

prohibits construing section 287.780 as expressly waiving sovereign immunity.

 The effect of section 105.850 on civil liability imposed by section 287.780 was

first addressed in Krasney v. Curators of University of Missouri, where we held that

section 105.850 applies to require the conclusion "that, any intimations to the contrary

notwithstanding, none of the provisions of the Workers['] Compensation Law shall be

construed as a waiver of sovereign immunity in favor of a state employee." 765 S.W.2d

at 650 (emphasis added.) Relying on Krasney, the Eastern District similarly held in King

v. Probate Division, Circuit Court of County of St. Louis, 21st Judicial Circuit, that under

section 105.850, "the state has the duty and obligation to comply with the provisions of

Chapter 287, but has not waived tort liability in connection therewith" by virtue of the

plain language of section 105.850. 958 S.W.2d at 93 (emphasis added). We reaffirmed

the holdings in Krasney and King in Wyman v. Missouri Department of Mental Health,

where we concluded that section 105.850 "preserv[es] the State's sovereign immunity

against tort claims, including tort claims for retaliatory discharge based on [section]

287.780," despite the 2005 amendments to the Workers' Compensation Law, and the

 12
proviso of section 287.800 requiring strict construction.8 376 S.W.3d at 22 (emphasis

added.) Most recently, the Eastern District rejected an invitation to conclude that

Krasney, King, and Wyman were wrongly decided when it held that "the Board of

Curators is a state employer," and that "sections 105.800 to 105.850 address the

applicability of chapter 287 to state employees and employers." Wille v. Curators of

Univ. of Mo., No. ED109082, 2021 WL 1097876, at *4, *6 (Mo. App. E.D. Mar. 23,

2021).9

 As was urged and rejected in Wyman and Wille, Poke argued before the trial court,

and again argues here, that Krasney and its progeny were wrongly decided. We need not

address that broad contention, however, as each case addresses the effect of section

105.850 on the state's civil liability in tort pursuant to section 287.780.10 That is

consistent with the fact that although section 105.850 does not mention the state, or state

employees, it is to be read in pari materia with sections 105.800 through 105.840, since

each provision was enacted at the same time, and for the noted purpose of requiring state

employers to extend workers' compensation coverage to state employees, as defined by

 8
 Not relevant to this case is the additional holding in Wyman that the State's sovereign immunity does not
necessarily bar a retaliatory discharge claim for "injunctive relief which seeks to reverse a state agency's prior
violation of its statutory obligations, or to prevent future violations." 376 S.W.3d at 23.
 9
 When the instant appeal was submitted following oral argument, our Supreme Court had before it the
employee's pending application for transfer in Wille, case number SC99110. On August 31, 2021, the Court denied
that application for transfer so that the Eastern District's opinion in Wille is now final.
 10
 In Krasney, King, Wyman, and Wille the employee claimant was employed by the state to perform duties
on behalf of the state, and was thus a "state employee" as defined by section 105.800. See Krasney, 765 S.W.2d at
648 (plaintiff was a librarian employed by the Curators of the University of Missouri, an entity through which the
State of Missouri functions to govern the University of Missouri system, as held by Tribune Publishing Co. v.
Curators of University of Missouri, 661 S.W.2d 575, 584 (Mo. App. W.D. 1983)); King, 958 S.W.2d at 92 (plaintiff
was an auditor employed by the Probate Division of the Circuit Court of the County of Saint Louis, a state employer
for workers' compensation purposes pursuant to Smith v. Thirty-Seventh Judicial Circuit of Missouri, 847 S.W.2d
755, 758 (Mo. banc 1993)); Wyman, 379 S.W.3d at 18 (plaintiffs were sixteen former or current employees of the
Fulton State Hospital, operated by the Missouri Department of Mental Health, an agency of the state); Wille, 2021
WL 1097876, at *1, *4 (plaintiff was the project director employed by the Curators of the University of Missouri,
and "the Board of Curators is a state employer").

 13
section 105.800. See State ex rel. Evans v. Brown Builders Elec. Co., 254 S.W.3d 31, 35

(Mo. banc 2008) ("In determining the intent and meaning of statutory language, the

words must be considered in context and sections of the statutes in pari materia, as well

as cognate sections, must be considered in order to arrive at the true meaning and scope

of the words." (internal quotation marks omitted))). As a matter of law, section

105.850's restraint on the civil liability otherwise imposed on all employers by section

287.780 is limited to situations where the state is the employer, and a state employee (as

defined by section 105.800) is the workers' compensation claimant. See Treasurer of

State v. Parker, 622 S.W.3d 178, 181 (Mo. banc 2021) (noting that we must ascertain the

intent of the General Assembly by considering the plain and ordinary language of statutes

and then giving effect to that intent if possible).

 A school district is a political subdivision of the state. Hughes v. Civil Serv.

Comm'n, 537 S.W.2d 814, 815 (Mo. App. 1976) ("School districts are political

subdivisions of the state . . . ."). Section 70.210(3) defines a "political subdivision" as:

 [C]ounties, townships, cities, towns, villages, school, county library, city
 library, city-county library, road, drainage, sewer, levee and fire districts,
 soil and water conservation districts, watershed subdistricts, county
 hospitals, any board of control of an art museum, any 911 or emergency
 services board authorized in chapter 190 or section 321.243, the board
 created under section 205.968 to 205.973, and any other public subdivision
 or public corporation having the power to tax.

A school district "perform[s] the duties of the state in the conduct and maintenance of . . .

public schools," and is "a subordinate agency, subdivision, or instrumentality of the

state." State ex inf. McKittrick v. Whittle, 63 S.W.2d 100, 102 (Mo. banc 1933).

However, that does not make a school district, or any other political subdivision, the

 14
"state" with employees who are "state employees." See P.L.S. ex rel. Shelton v. Koster,

360 S.W.3d 805, 815 (Mo. App. W.D. 2011) ("School districts are not typically regarded

as a division or department of state government, but, as already mentioned, are

considered legally separate, special-purpose, local governmental subdivisions with

powers similar to those of a town, village, or county, including the ability to levy taxes.").

The distinction between the "state" and a school district was most recently underscored in

S.M.H. v. Schmitt, 618 S.W.3d 531 (Mo. banc 2021), where our Supreme Court

unequivocally held:

 [P]ublic school districts in Missouri are regularly considered political
 subdivisions--not agencies of the state. See Mo. const. art X, sec. 15 ("The
 term "other political subdivision," . . .shall be construed to include . . .
 school [districts'"). Public school districts, as political subdivisions, are
 distinct from "agencies of the state." See P.L.S., 360 S.W.3d at 812-13. In
 P.L.S., the court of appeals observed, while school districts are certainly
 "governmental instrumentalities," they are not "agencies of the state" under
 the "technical, governmental sense." Id. at 813. Instead, school districts
 are "political subdivisions" and "considered legally separate, special-
 purpose, local governmental subdivision with powers similar to those of a
 town, village, or county." Id. at 815.

 Because school districts are not "agencies of the state," district employees
 are routinely excluded from statutory provisions covering employees of
 "agencies of the state." See, e.g., id. at 815.

It follows, therefore, that section 105.800 et. seq., which applies by its express terms to

the "state" and to "state employees," has no application to school districts or to school

district employees.

 Because the School District is not the "state," and Poke is not a "state employee,"

section 105.850 has no application to this case, and cannot be relied on to support the

conclusion that sovereign immunity is not waived for the School District pursuant to

 15
section 287.780. The trial court's express reliance on Krasney and King to reach a

contrary conclusion is legally erroneous.11

Section 287.780 and section 287.030.1(2) combine to expressly waive sovereign
immunity

 We are nonetheless required to affirm the trial court's grant of summary judgment

on any ground supported by the record. Estes as Next Friend for Doe, 623 S.W.3d at

687. As such, we are required to address the fact that, before it even considered the

implications of section 105.850, Krasney held that "[n]either [section] 287.780 nor any

other component of the Workers['] Compensation Law expresses an intention to submit a

governmental entity to liability for tort for breach of that retaliatory discharge provision."

765 S.W.2d at 650. Krasney reached this conclusion because section 287.780 is silent

with respect to an intent to waive sovereign immunity, and because (according to

Krasney) "[t]he waiver of sovereign immunity . . . must be by express consent to be

sued." Id. In other words, Krasney held that without regard to section 105.850, section

287.780 does not expressly waive sovereign immunity because it is silent on the subject.

 In Wyman, we observed that "[t]his aspect of Krasney may be questionable in light

of Bachtel v. Miller County Nursing Home District, 110 S.W.3d 799 (Mo. banc 2003)."

376 S.W.3d at 21. In Bachtel, the Supreme Court of Missouri addressed how the General

Assembly can expressly waive sovereign immunity and held:

 Nothing in the statutes or case law requires that certain magic words must
 be used in order to waive sovereign immunity. The case law . . . merely
 requires that the intent of the legislature to waive sovereign immunity must
 11
 We do not fault the trial court, however, as Poke primarily defended the School District's motion for
summary judgment by more broadly arguing that Krasney and King were wrongly decided and should be
disregarded.

 16
 be express rather than implied. While the most common way to express
 that intent may be to specifically state that sovereign immunity is waived,
 the legislature also expresses its intent through other language.

110 S.W.3d at 804. Though Wyman questioned Krasney's holding that legislative waiver

of sovereign immunity requires an expressly stated consent to be sued, Wyman was not

required to abrogate the holding, and instead relied on Krasney's alternative holding that

section 105.850 legislatively disclaims a waiver of sovereign immunity under the

Workers' Compensation Law in "favor of a state employee." Wyman, 376 S.W.3d at 21

(emphasis added) (quoting Krasney, 765 S.W2d at 650).

 In this case, because section 105.850 has no application to the School District, (as

we explain supra), we are now compelled to take the step alluded to, but avoided, in

Wyman. We conclude that, in light of Bachtel, Krasney's holding that section 287.780

does not expressly waive sovereign immunity because it fails to include an express

consent for governmental bodies to be sued should not be followed. Instead, we conclude

that the General Assembly's creation of a civil action for damages in section 287.780 that

can be brought against any employer, and the General Assembly's intent that the

Workers' Compensation Law apply to every governmental body included within the

definition of "employer" at section 287.030.1(2), combine to reflect an express waiver of

sovereign immunity for section 287.780 claims of retaliatory discharge.12 In support of

this conclusion, we note there is no discernable difference between this case and Bachtel,

 12
 The General Assembly's express waiver of sovereign immunity demonstrated by reading section
287.030.1(2) with section 287.780 remains subject, however, to the retention of sovereign immunity by the state
with respect to claims of retaliatory discharge by state employees, as provided in section 105.850, and as held in
Krasney, King, Wyman, and Wille. For the reasons herein explained, we need not address Poke's contention that this
holding in Krasney, King, Wyman, and Wille should no longer be followed.

 17
where the Supreme Court found an express waiver of sovereign immunity "[w]here (1)

the relevant statutes created a private right of action for nursing home employees who

were retaliated against for reporting abuse or neglect of residents, and (2) the statutes

were made generally applicable to nursing home districts (which would otherwise be

entitled to sovereign immunity)." Wyman, 376 S.W.3d at 21 n.6 (citing Bachtel, 110

S.W.3d at 804); see also Otte v. Mo. State Treasurer, 141 S.W.3d 74, 76 (Mo. App. E.D.

2004) ("In Bachtel, . . . the court found that sovereign immunity was waived by statutory

language that created a private right [of] action and defined the state agency being sued

as being subject to the act."); cf. R.M.A. by Appleberry v. Blue Springs R-IV Sch. Dist.,

568 S.W.3d 420, 429 (Mo. banc 2019) (holding that a provision prohibiting "any person"

from discriminating in the use of a public accommodation, read with the definition of

public accommodation which included those owned by the state or its political

subdivisions, constituted an express waiver of sovereign immunity even though the

definition of "person" did not expressly include the state or its political subdivisions).

 The School District is not protected by sovereign immunity from Poke's claim for

retaliatory discharge pursuant to section 287.780. The trial court committed legal error in

concluding otherwise in order to grant summary judgment in favor of the School District.

Poke's point on appeal is granted.

 18
 Conclusion

 The trial court's Judgment is reversed. This matter is remanded to the trial court

with instructions to vacate its Judgment, and to conduct further proceedings consistent

with this opinion.

 __________________________________
 Cynthia L. Martin, Judge

All concur

 19